# EXHIBIT H

**Citation # 1**
**2002 U.S. Dist.LEXIS 7490**

BARROW INDUSTRIES, INC. d/b/a MERRIMAC TEXTILE CO., Plaintiff v. JST AMERICA, INC.,
SOUTHERN SALES, INC. HILLCRAFT FURNITURE CO., LIFE STYLE FURNITURE CO., STILL
CREEK, INC. and DIXIELAND FURNITURE MFG. CO., INC., Defendants

Civil Action No. 01-11619-PBS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

2002 U.S. Dist. LEXIS 7490

April 9, 2002, Decided

**DISPOSITION:** **[\*1]** Magistrate's recommendation: Defendants JST America, Inc.,
Southern Sales, Inc. and Hillcraft Furniture Co. should be dismissed for want of in personam
jurisdiction.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff company sued defendant companies, alleging
copyright infringement. Defendants moved to dismiss under <u>Fed. R. Civ. P. 12(b)(2)</u> for
lack of in personam jurisdiction. The matter was referred to a magistrate judge.

**OVERVIEW:** The court found that plaintiff did not make, and could not make, a prima
facie showing authorizing the exercise of in personam jurisdiction based on a finding of
specific jurisdiction with respect to three defendants. As to one defendant, one contact
with the instant forum was wholly unrelated to the copyright claim brought in the
complaint, and plaintiff did not say that, but for that contact, the alleged copyright
infringement would not have occurred. Regarding the other contact (an advertisement in
a magazine), plaintiff did not show that anything in that magazine was related to the
causes of action in the complaint. In any event, plaintiff did not show this defendant
purposefully availed itself of any contacts in the forum. Likewise, plaintiff could not
satisfy the due process component of the analysis as to the other defendants. Further,
plaintiff did not show, apart from the due process analysis, that a rule or statute
authorized exercise of jurisdiction over defendants.

**OUTCOME:** The court recommended that the motion be granted as to three defendants.

**CORE TERMS:** fabric, magazine, advertisement, infringing, customers, forum state,
personam jurisdiction, tortious, general jurisdiction, cause of action, advertising, reside,
personal jurisdiction, prima facie, purposefully, recommendation, exercise of jurisdiction,
relatedness, continuous, systematic, purposeful, availment, availed, motion to dismiss,
independent contractor, causes of action, advertised, regularly, consumers, selling

### LexisNexis(TM) Headnotes

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*

*HN1* In Massachusetts, a court may exercise personal jurisdiction over an out-of-state defendant if jurisdiction does not violate due process and if it is authorized by the Massachusetts Long-Arm statute or other rule. Due process requires that a defendant have certain minimum contacts with the forum state. When analyzing minimum contacts, the overwhelming majority of the courts distinguish between general or specific jurisdiction. General jurisdiction requires that defendant's contacts are continuous and systematic, and may be asserted where these contacts are unrelated to plaintiff's cause of action. Specific jurisdiction, on the other hand, requires only that a defendant purposefully avail himself in the forum state, but may only be asserted where the plaintiff's cause of action arises from, or is related to the defendant's contacts in the forum state. Furthermore, specific jurisdiction also requires authorization by a statute or rule.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*

*HN2* In order to assert general jurisdiction over a defendant, two requirements must be met. First, the defendant must have continuous and systematic general business contacts with the state, and second, the exercise of jurisdiction must be reasonable. When determining whether a defendant has continuous and systematic contacts with Massachusetts, precedent in the First Circuit directs that the courts make a fact-specific evaluation of the defendant's contacts and then compare those with contacts found to be insufficient for general jurisdiction in previous cases. Cases suggest that a defendant must have substantial contacts in Massachusetts to be subject to this type of jurisdiction. Moreover, mere purchases, even if made regularly, are not sufficient to subject defendant to general personal jurisdiction where the cause of action is not related to those purchases.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*

*HN3* Mere purchases and related contacts, standing alone, do not make out a case of general jurisdiction.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*

*HN4* In order to assert specific jurisdiction over a defendant, a plaintiff must make out a prima facie showing, first, that the exercise of jurisdiction would be consistent with settled notions of due process, and second, that a statute or rule authorizes jurisdiction over a defendant.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*

*HN5* The first major component of a specific jurisdiction analysis is the due process component. To establish that specific personal jurisdiction would not offend due process, established precedent in the First Circuit considers three factors: first, whether the cause of action arises out of, or relates to, the defendant's forum state activities; second, whether a defendants' contacts with the forum state purposefully availed the benefits and protections of that state's laws; and finally, whether jurisdiction would be reasonable in light of the gestalt test.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*

*HN6* The first consideration in determining whether due process is violated in the context of asserting specific jurisdiction over a defendant (whether the cause of action arises out of, or relates to, the defendant's forum state activities) focuses on the nexus between the cause of action and a defendant's contacts, if any, in the forum. First, it is incumbent to identify a defendant's alleged contacts as there can be no requisite nexus between the contacts and the cause of action if no contacts exist. Following that identification of contacts, one must analyze the relatedness of

those contacts to the plaintiff's claim. Related to this latter requirement is the principle that, in a tort case, this condition of relatedness usually requires the plaintiff to establish that its injury would not have occurred but for defendant's contacts with the state.

**Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction**

HN7 ⚡ The second major component of a specific jurisdiction analysis is the rule or statutory authorization component -- that is, does a rule or statute authorize the exercise of specific jurisdiction.

**Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction**

HN8 ⚡ Mass. Gen. Laws § 223A(3)(d) requires that a plaintiff show that a defendant regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the Commonwealth of Massachusetts.

**COUNSEL:** For BARROW INDUSTRIES, INC. dba Merrimac Textile Co., Plaintiff: I. Stephen Samuels, Samuels, Gauthier & Stevens, Boston, MA.

For JST AMERICA, INC., Defendant: Michael A. Albert, Wolf, Greenfield & Sacks, Boston, MA.

For HILLCRAFT FURNITURE, CO., Defendant: William O. Rutledge, Rutledge and Davis, P.L.L.C., New Albany, MS.

For HILLCRAFT FURNITURE, CO., Defendant: William P. Knight, Rutledge and Davis, Ecru, MS.

**JUDGES:** Lawrence P. Cohen, UNITED STATES MAGISTRATE JUDGE.

**OPINIONBY:** Lawrence P. Cohen

**OPINION:** REPORT AND RECOMMENDATION ON MOTION TO DISMISS

April 9, 2002

COHEN, M.J.

This is a trademark case in which the plaintiff, Barrow Industries, Inc. d/b/a Merrimac Textile Co. ("Barrow" or "plaintiff") alleges that the above-named defendants infringed its copyrighted fabric design "M 4760". n1 All defendants moved to dismiss the complaint under Rule 12(b)(2), F.R. Civ. P., for want of in personam jurisdiction ( # 12). For the reasons which follow, this court recommends that that motion to dismiss ( # 12) be allowed insofar as it relates to the **[\*2]** defendants JST America, Inc., Southern Sales, Inc. and Hillcraft Furniture Co. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 According to the complaint, which this court takes as true, the fabric design which is the subject matter of this complaint was granted a copyright registration on or about October 7, 1999.

n2 All defendants joined in the same motion to dismiss ( # 02). Apparently, on March 20, 2002, at or about the same time that this court finished its final draft

on its initial report and recommendation, preparatory to the entry of that report and recommendation, the plaintiff filed a "Notice of Dismissal as to Four of the Six Defendants" ( # 30), in which he purported to voluntarily dismiss the claims in the complaint without prejudice insofar as those claims were asserted against defendants Hillcraft Furniture Co., Life Style Furniture Co., Still Creek, Inc., and Dixieland Furniture Mfg. Co., Inc. For whatever reason, counsel for plaintiff did not, insofar as we are aware, notify the clerk for our chambers concerning the filing of this Notice of Dismissal as to Four of the Six Defendants, and we were not aware of that filing until on or about March 26, 2002.

Upon becoming aware of that filing, the draft original report and recommendation (which recommended dismissal vis a vis all defendants) was substantially rewritten to eliminate points and matters relating to defendants, Life Style Furniture Co., Still Creek, Inc., and Dixieland Furniture Mfg. Co., Inc.

This Report and Recommendation recommends a disposition of the motion to dismiss filed by defendant Hillcraft Furniture Co., the Notice of Dismissal as to Four of the Six Defendants ( # 30) notwithstanding. And that is because that Notice of Dismissal as to Four of the Six Defendants is a nullity insofar as it relates to defendant Hillcraft Furniture Co. A party may voluntarily dismiss an action against a party without motion under the provisions of Rule 41(a)., F.R. Civ. P. But that option is not available if the party against whom the voluntary dismissal is directed has filed an answer, absent stipulation signed by all parties. That Rule provides in pertinent part:

a) Voluntary Dismissal: Effect Thereof.

(1) By Plaintiff; by Stipulation. Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of the United States, an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. (Emphasis added).

In this case, defendant Hillcraft Furniture Co. has already filed an answer ( # 02) - well before the Dismissal as to Four of the Six Defendants ( # 30) was filed. And that Dismissal as to Four of the Six Defendants ( # 30) was not accompanied by a stipulation of dismissal signed by all parties who have appeared in the action.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**[*3]**

I. Relevant Undisputed Facts

The relevant undisputed facts show the following with respect to the above-named parties in terms of their doing general business in the Commonwealth of Massachusetts and their respective contacts with the Commonwealth of Massachusetts vis a vis the causes of action asserted in the complaint.

1. Plaintiff Barrow

Barrow designs, markets and sells fabrics throughout the United States and has its principle place of business in Norwood, Massachusetts. On or around July 1, 1999, Barrow began to market a fabric in an original design known as "M 4760." Stacie Brasco ("Brasco") was the designer of this fabric, but is no longer employed at Barrow. On or around October 7, 1999, Barrow was granted a Copyright Registration for M 4760 and has remained the sole proprietor of all rights, title and interest vested in the copyrighted design. Subsequent to M 4760 being marketed, defendant JST began to market a fabric in a design called "Classique Persian," Barrow claims that that "Classique Persian" design infringes upon the M 4760.

## 2. Defendant JST America, Inc.

Defendant JST is a Florida corporation incorporated in Florida engaged in the business **[*4]** of designing, making, and selling fabrics. JST is not registered to do business in Massachusetts. It has only three employees - all of whom reside in Florida. n3 All of its assets are in Florida. JST has never had any offices, warehouses, inventory, bank accounts, telephone listings, mailing addresses, or other assets in Massachusetts. JST has never had any customers, suppliers, officers, employees, owners, agents or sales representatives in Massachusetts. JST has never sold its "Classique Persian" in the Commonwealth of Massachusetts, n4 and JST has never derived any revenue from Massachusetts. With the exception of advertising in an international magazine of otherwise undefined circulation, n5 as set forth immediately below, JST has never advertised or solicited business in Massachusetts. JST did, on one occasion, n6 advertise its "Classique Persian" in that international trade publication Fabrics & Furnishings International ("FFI"), a copy of which was received by plaintiff.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 One Stacie Brasco was formerly employed by plaintiff as a designer. Ms. Brasco did not participate in the design of the fabric subject to the copyright. Ms. Brasco subsequently left the employ of plaintiff. Recently, that is, after defendant JST allegedly designed the infringing fabric, Ms. Brasco became an independent contractor for JST. She is not an employee of JST, nor is it alleged that she participated in the design of the alleged infringing design.

**[*5]**

n4 From best that we can tell from the pleadings and other materials filed by the plaintiff, plaintiff alleges that the remaining defendants (discussed in the text below) may have sold the "Classique Persian" design to other consumers. Significantly, however, plaintiff has not proffered any evidence whatsoever that the "Classique Persian" was sold in the Commonwealth of Massachusetts.

n5 The Fabrics & Furnishings International Magazine (submitted by plaintiff as an exhibit) is not your average magazine directed to a large base of ordinary consumers. It publishes four issues each year for a yearly subscription price of $ 130 in United States Currency - that is, $ 32.50 per issue. From all that plaintiff has proffered (the Fabrics & Furnishings International Magazine - Winter 2001/2002 issue), subscriptions to the magazine are only sold by a company in India and a company in Japan. Most of its advertisers appear to be from sources outside the United States.

So far as we know, plaintiff is the only Massachusetts company or person who

subscribes to that magazine. Plaintiff, in its supplemental opposition ( # 27, p. 2) says:

As can be seen from the attached Declaration of Gary Silverstein, and particularly in Exhibit A of the Silverstein Declaration, JST America is currently advertising the infringing fabric pattern throughout the United States, throughout the world, and specifically to subscribers in Massachusetts (including Plaintiff Barrow).

\* \* \* \*

The attached Silverstein Declaration·and the FFI magazine containing the JST American, Inc. advertisement unequivocally show that the Defendants are soliciting business in Massachusetts and, in particular, are offering the infringing fabric design to customers in Massachusetts. (Emphasis added).

There are, however, no facts supporting this suggestion. In his Declaration, Silverstein (the Senior Vice President of plaintiff) refers exclusively to the contents of Page 8 of the appended Fabrics & Furnishings International Magazine in support of his averment that the magazine is "...mailed to subscribers throughout the United States and to 74 countries." (Emphasis added). But nothing on Page 8 supports that conclusion. All it says is, at most, that the magazine "...is shipped via air mail to 74 countries."

There is simply nothing in the record before this court which shows that that magazine was or is circulated throughout the United States, much less "...specifically to subscribers in Massachusetts[,]" or that the "...Defendants are soliciting business in Massachusetts and, in particular, are offering the infringing fabric design to customers in Massachusetts.

**[\*6]**

n6 So far as the record evidence shows.


- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

3. Defendant Southern Sales, Inc.

Defendant Southern Sales, Inc. (Southern), is a Mississippi corporation incorporated in Mississippi engaged in the business selling fabrics to persons or corporations in the furniture business in Mississippi and other southern states, and not to persons or corporations in Massachusetts. It has its principal place of business in Mississippi. All of Southern's employees reside in either Mississippi or North Carolina, and none reside in Massachusetts. None have ever resided in Massachusetts All of its assets are in Mississippi. Southern has never had any offices, warehouses, inventory, bank accounts, telephone listings, mailing addresses, or other assets in Massachusetts. Southern has never had any customers, suppliers, officers, employees, owners, agents or sales representatives in Massachusetts. Southern has never derived any revenue from Massachusetts. Southern has never advertised or solicited business in Massachusetts.

4. Defendant Hillcraft Furniture Co.

Defendant Hillcraft Furniture Co. (Hillcraft) is a Mississippi **[\*7]** corporation incorporated in

Mississippi engaged in the business of manufacturing and selling furniture primarily to retailers. It has its principal place of business in Mississippi. All of Hillcraft's employees reside in Union County, Mississippi, and none reside in Massachusetts. n7 All of its assets are in Mississippi. Hillcraft has never had any sales representatives, telephone listings, mailing addresses, or bank accounts in Massachusetts, and has never paid taxes in Massachusetts. On one occasion in the past, Hillcraft sold a "small account" in Massachusetts. n8 Apart from that, Hillcraft has never "solicited, manufactured, tested, designed, assembled, developed, marketed, promoted, processed, imported, converted, sold or installed any product including goods or fabrics" in the Commonwealth of Massachusetts. On ten occasions during the period January 31, 2000 and March 9, 2001, plaintiff conducted 10 business transactions with Hillcraft. Of those ten transactions, Hillcraft was not a seller of goods: Seven of the transactions involved Barrow sending Hillcraft samples at no cost, and two were actual purchases by Hillcraft from plaintiff. The remaining transaction involved **[*8]** Hillcraft returning the goods for a full refund.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n7 Hillcraft has independent sales representatives, but none of them reside in Massachusetts.

n8 That "small account" relating to furniture did not involve the copyrighted fabric or the alleged infringing fabric which is the subject matter of this suit.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## II. Discussion

All defendants move to dismiss for want of in personam jurisdiction.

*HN1* In Massachusetts, a court may exercise personal jurisdiction over an out-of-state defendant if jurisdiction does not violate due process and if it is authorized by the Massachusetts Long-Arm statute or other rule. United States v. Swiss American Bank, Ltd., 191 F.3d 30, 36 (1st Cir. 1999); United States v. Swiss American Bank, Ltd., 274 F.3d 610, 617 (1st Cir. 2001). Due process requires that a defendant have certain "minimum contacts" with the forum state. Heliocopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984). **[*9]** When analyzing minimum contacts, the overwhelming majority of the courts distinguish between general or specific jurisdiction. United States v. Swiss American Bank, Ltd., 191 F.3d 30, 36. General jurisdiction requires that defendant's contacts are "continuous and systematic," and may be asserted where these contacts are unrelated to plaintiff's cause of action. United States v. Swiss American Bank, Ltd., 191 F.3d 30, 36, n.3. Specific jurisdiction, on the other hand, requires only that a defendant "purposefully avail" himself in the forum state, but may only be asserted where the plaintiff's cause of action arises from, or is related to the defendant's contacts in the forum state. Id. Furthermore, specific jurisdiction also requires authorization by a statute or rule. Id. In the present case, plaintiff Barrow does not specify whether this court has either specific or general jurisdiction over any of the defendants, n9 so this court addresses both.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n9 From best we can tell, plaintiff relies on notions of both "general" and "specific" jurisdiction. In its opposition to the motions to dismiss ( # 20), plaintiff says:In Paragraph 9 of the Complaint, Plaintiff has set forth the basis of this Court's personal jurisdiction over all of the Defendants, including the basis that the Defendants have transacted business in Massachusetts, as well as that Defendants have caused tortious injury in Massachusetts to Plaintiff by selling and delivering fabric to customers outside of Massachusetts while Defendants regularly do or solicit business in Massachusetts, and/or engage in other persistent courses of conduct in Massachusetts. (Emphasis added).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## [*10]

General Jurisdiction

*HN2*In order to assert general jurisdiction over a defendant, two requirements must be met. First, the defendant must have "continuous and systematic" general business contacts with the state (see Heliocopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984)), and second, the exercise of jurisdiction must be reasonable. United States v. Swiss American Bank, 274 F.3d 610, 617 (1st Cir. 2001). When determining whether a defendant has "continuous and systematic" contacts with Massachusetts, precedent in the First Circuit directs that the courts make a "fact-specific evaluation" of the defendant's contacts and then compare those with "contacts found to be insufficient for general jurisdiction in previous cases." (Emphasis added). Id. at 620. While there have been only a few First Circuit cases to examine general jurisdiction in detail, these cases suggest that a defendant must have substantial contacts in Massachusetts to be subject to this type of jurisdiction. Id.; Glater v. Eli Lilly Co., 744 F.2d 213, 215 (Indiana corporation which employed [*11] eight salespeople in New Hampshire, conducted business in the state and advertised in a trade journal magazine which is distributed there did not have sufficient contacts to justify general jurisdiction); United Elec., Radio, and Machine Workers of America v. 163 Pleasant Street Corp., 960 F.2d 1080 (1st Cir. 1992)(owning a subsidiary company in Massachusetts was "manifestly insufficient" to warrant general jurisdiction over defendant); Noonan v. Winston Co., 135 F.3d 85, 94 (1st Cir. 1998)(directly soliciting business in Massachusetts resulting in orders amounting to some $ 585,000 was insufficient for general jurisdiction). Moreover, "mere purchases," even if made regularly, are not sufficient to subject defendant to general personal jurisdiction where the cause of action is not related to those purchases. Heliocopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408-409, 418, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984). n10

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n10 In the words of the Heliocopteros Court ( Id. at 408-409):

The Texas Supreme Court focused on the purchases and the related training trips in finding contacts sufficient to support an assertion of jurisdiction. We do not agree with that assessment, for the Court's opinion in Rosenberg Bros. & Co. v. Curtis Brown Co., 260 U.S. 516, 43 S. Ct. 170, 67 L. Ed. 372 (1923) (Brandeis,

J., for a unanimous tribunal), makes clear that purchases and related trips, standing alone, are not a sufficient basis for a State's assertion of jurisdiction. (Emphasis added).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## [*12]

Most recently, in the Swiss American Bank case, the United States filed a claim against four foreign banks for conversion, unjust enrichment and breach of contract. United States v. Swiss American Bank, 274 F.3d 610, 616-617 (1st Cir. 2001) The defendant's contacts with the United States included: 12 advertisements in an airline magazine, a licensing agreement with a New York company, being a party in an unrelated lawsuit in Florida, postings on three different web sites regarding information about the defendant, a contract with an Arkansas company, a joint venture with an Ohio bank, a loan to a Colorado company, an alleged business relationship with a California company, accounts with four New York banks, and a business relationship with a Massachusetts resident. Id. at 619. The First Circuit found that the defendant's contacts with the United States, including its numerous business relationships, advertisements in an airline magazine and participation in an unrelated lawsuit to be "less continuous and systematic than contacts found to be insufficient for general jurisdiction in previous cases." Id. at 620.

In this case, plaintiff [*13] has not, on the undisputed facts, made out a prima facie case n11 showing that any of the defendants' contacts within the Commonwealth of Massachusetts was or is "continuous and systematic" authorizing assertion of in personam jurisdiction based on the concept of "general" jurisdiction. As to the defendant JST, all that plaintiff has shown is that JST advertised its allegedly infringing product in the international trade publication Fabrics & Furnishings International ("FFI"), but absent any showing that that magazine was circulated generally in Massachusetts, and that it used the services of one independent contractor (Ms. Brasco) who just happens to reside in Massachusetts some time after the allegedly infringing fabric was designed. That is clearly less than shown in the Swiss American Bank case, and falls far short of making out a prima facie case of "general" jurisdiction vis a vis JST. Even less so with respect to defendant Hillcraft. The only contacts in Massachusetts which plaintiff can show with respect to this defendants is that it purchased fabrics in Massachusetts. But *HN3* mere purchases and related contacts, standing alone, do not make out a case of "general" jurisdiction. [*14] Heliocopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408-409, 418, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984). And as to the remaining defendant with a pending and ripe motion before the court (Southern) plaintiff has shown no contacts with the Commonwealth of Massachusetts - much less "continuous and systematic". n12

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n11 The First Circuit, in Boit v. Gar-Tec Products, Inc., 967 F.2d 671 (1st Cir. 1992), formulated three standards that might be employed when evaluating a motion to dismiss for want of in personam jurisdiction. The most conventional of these three methods is the prima facie approach which directs that the court, in ruling upon a motion to dismiss for want of in personam jurisdiction, "...consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Id. at 675. Proffered evidence, within the meaning of Boit, however, does not mean that a plaintiff can simply rest on the pleadings. Foster-Miller, Inc. v. Babcock & Wilcox

Can., 46 F.3d 138, 145 (1st Cir. 1995). That is the approach, that is the prima facie approach based on the undisputed facts, which this court employs herein in considering the existence of "general" or "specific" jurisdiction.

**[*15]**

n12 Indeed, as to all of the defendants other than JST, plaintiff simply says (Plaintiff's Opposition to Defendants' Motion to Dismiss ( # 20, p. 4)):

Regarding the remaining Defendants, Plaintiff Barrow has asserted in its complaint that these entities are customers of Defendant JST with regard to the infringing fabric. Under the Uniform Commercial Code, Plaintiff Barrow asserts that Defendant JST is required to indemnify its customers if it sells them infringing goods. Therefore, Plaintiff Barrow asserts that, if this Court agrees that Defendant JST is subject to the personal jurisdiction of this Court, the other Defendants are likewise subject to such personal jurisdiction because they are, under the Uniform Commercial Code, indemnified and must be defended by Defendant JST.

But that is a non sequitur. Even if the remaining defendants had indemnification rights vis a vis JST, those indemnification rights are personal to those defendants, and do not bear at all on the question of in personam jurisdiction.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Specific Jurisdiction

*HN4*⚓In order to assert "specific" jurisdiction **[*16]** over a defendant, a plaintiff must make out a prima facie showing, first, that the exercise of jurisdiction would be consistent with settled notions of due process, and second, that a statute or rule (in this case, the Massachusetts Long-Arm statute) authorizes jurisdiction over a defendant.

The Due Process Component

*HN5*⚓The first major component of a "specific" jurisdiction analysis is the due process component. Even assuming a showing of the second element, that is, that the Massachusetts Long-Arm statute authorizes the exercise of jurisdiction, n13 plaintiff has not made - and cannot make - a prima facie showing that the exercise of in personam jurisdiction over the defendants in this case would be consistent with established notions of fair play and due process. To establish that specific personal jurisdiction would not offend due process, established precedent in this Circuit considers three factors: first, whether the cause of action arises out of, or relates to, the defendant's forum state activities; second, whether a defendants' contacts with the forum state "purposefully availed" the benefits and protections of that state's laws; and finally, whether jurisdiction would **[*17]** be reasonable in light of the gestalt test. United States v. Swiss American Bank, 274 F.3d 610, 620-621 (1st Cir. 2001).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n13 Plaintiff does not specifically refer to the Massachusetts Long-Arm Statute (G.L, 223A, § 3) in terms of meaningful analyses. All plaintiff says on this score is

that (Plaintiff's Opposition to Defendants' Motion to Dismiss ( # 20, p. 1)) defendants -caused tortious injury in Massachusetts to Plaintiff by selling and delivering fabric to customers outside of Massachusetts while Defendants regularly do or solicit business in Massachusetts, and/or engage in other persistent courses of conduct in Massachusetts. (Emphasis added).

This general boilerplate apparently refers to subsection (d) of the Massachusetts Long-Arm statute which provides in pertinent part:

A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's

(d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.

For one thing, plaintiff has not shown that any of the defendants caused tortious injury in the Commonwealth of Massachusetts by any act or omission outside the Commonwealth of Massachusetts. Plaintiff has not even alleged - much less made a showing of a prima facie case - that any of the defendants sold the alleged infringing product in Massachusetts. In all of its pleadings, and in all of its facts gathered, the most that plaintiff has said is that JST, and JST alone, advertised its allegedly infringing product in the international trade publication Fabrics & Furnishings International ("FFI"), only one copy of which (according to the record made by plaintiff) happened to be in the hands of the plaintiff in Massachusetts. While one court has found that the advertising of an allegedly infringing product in the Commonwealth of Massachusetts might cause injury in Massachusetts, see Hologic, Inc. v. Lunar Corporation, 36 U.S.P.Q.2d 1182, 1995 WL 661238 (D.Mass. 1995), that finding related to subsection (c) of G.L 223A, § 3, not subsection (d). Moreover, in that case, Judge Keeton found the element of "causing tortious injury" in the Commonwealth of Massachusetts, not because the owner of the patent resided in Massachusetts, but rather because the advertising involved in that case targeted Massachusetts consumers. As stated by Judge Keeton:I do not base this conclusion [the finding of tortious injury in the Commonwealth of Massachusetts] on the patent-holder's residence in Massachusetts, but on the defendant's attempts to create a market for the accused product in Massachusetts. (Emphasis in original).

For another thing, even if plaintiff could make a showing of the requisite tortious injury in Massachusetts, subsection (d) of G.L. 223A, § 3, also, by its very terms, requires the showing that a defendant "...regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth". And plaintiff has not made, and cannot make, that showing in this case.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -


[*18]

HN6⊼The first consideration (whether the cause of action arises out of, or relates to, the defendant's forum state activities) focuses on the "nexus" between the cause of action and a

defendant's contacts, if any, in the forum. United States v. Swiss American Bank, 274 F.3d 610, 621 (1st Cir. 2001). First, it is incumbent to identify a defendant's alleged contacts as "there can be no requisite nexus between the contacts and the cause of action if no contacts exist." Id. Following that identification of contacts, one must analyze the relatedness of those contacts to the plaintiff's claim. Massachusetts School of Law v. ABA, 142 F.3d 26, 35 (1st Cir. 1998). Related to this latter requirement is the principle that in a tort case (as here), this condition of relatedness usually requires the plaintiff to establish that its injury would not have occurred but for defendant's contacts with the state. Id.

Applying these principles to the present facts, plaintiff has not made, and cannot make, a prima facie showing authorizing the exercise of in personam jurisdiction based on a finding of "specific" jurisdiction. As to the defendant JST, plaintiff [*19] has identified but two supposed contacts within the Commonwealth of Massachusetts, to wit: (1) that Stacie Brasco, who was previously employed by the plaintiff and who resides in Massachusetts, serves as an independent contractor for JST; and (2) that JST advertised its allegedly infringing product in the international trade publication Fabrics & Furnishings International ("FFI"), only one copy of which has been shown (on the record established by the plaintiff) to have been found in the Commonwealth of Massachusetts. The first contact - i.e., the use of Ms. Brasco as an independent contractor - is wholly unrelated to the copyright claim brought in the complaint, and plaintiff does not say, and cannot say, that "but for" JST's use of Ms. Brasco as an independent contractor, the alleged copyright infringement would not have occurred.

As to the second (the advertisement in the Fabrics & Furnishings International magazine), plaintiff has made no showing whatsoever that anything in that one single magazine is related to the causes of action referred to in the complaint. The complaint in this case was filed on September 21, 2001, and the causes of action asserted therein are alleged [*20] to have occurred prior to the filing of that complaint. The Fabrics & Furnishings International magazine to which plaintiff refers, however, was the publication for the **Winter 2001/2** issue, and plaintiff has made no showing whatsoever that any advertisements placed therein by JST or others is "related to" the causes of actions referred to in the complaint which predated that publication of the Fabrics & Furnishings International magazine. n14 Again, plaintiff does not say, and, because of temporal considerations, cannot say, that "but for" the advertisements in the single issue of the Fabrics & Furnishings International magazine, the alleged copyright infringement would not have occurred. So, too, with the remaining defendants. Although Hillcraft made certain purchases of fabric from plaintiff in the past, plaintiff does not even suggest that these isolated purchases were related to the causes of action referred to in the complaint. And defendant Southern had no contacts whatsoever with the Commonwealth of Massachusetts, and, as stated United States v Swiss American 274 F.3d 610, at p. 11, "there can be no requisite nexus between the contacts and the cause of action if no contacts exist." United States v. Swiss American Bank, 274 F.3d 610, 621 (1st Cir. 2001). [*21]

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n14 That is not to say that a single advertisement in a magazine of general circulation can never satisfy the relatedness due process test. In Hasbro, Inc. v. Clue Computing, Inc., 994 F. Supp. 34, 44 (D.Mass. 1997), Judge Woodlock addressed the issue of advertising in the context of a web site. Based on precedent referred to elsewhere in that opinion, at pp. 40-42, he concluded that the advertising in that case satisfied the initial inquiry of relatedness. Id., at 44. But in that case, the facts showed that the defendant specifically targeted Massachusetts consumers, noting that "as part of its advertising, Clue lists

Digital, a Massachusetts company, as one of its clients, presumably hoping to attract new customers with Digital's name recognition." (Emphasis added). Elsewhere in that opinion, Judge Woodlock observed ( Id. at 45):In this case, Clue Computing purposefully directed its advertising at all the states. It did nothing to avoid Massachusetts. It knowingly worked for Digital, with PTS as an intermediary. In fact, Clue Computer's work for Digital effectively comprised 33-50% of Clue Computing's 1995 annual income. Indeed, Clue Computing has availed itself of the benefits of doing business in the forum state by advertising its work for Digital on its Web site, in an effort to attract more customers. Consequently, unlike the defendant in Accutest, Clue Computing has taken no measures to avoid contacts in the forum state, but rather, has encouraged them. (Emphasis added).

That is clearly not this case.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*22]

Moreover, even if plaintiff passes the initial relatedness inquiry vis a vis defendant JST by virtue of JST's advertisements in the single issue of the Fabrics & Furnishings International magazine proffered by plaintiff, plaintiff has fallen far short of making any showing that JST "purposefully availed" itself of any contacts in Massachusetts - that is, that JST "purposefully and voluntarily directed [its] activities toward the forum so that [it] should expect. . .to be subject to the court's jurisdiction based on these contacts." United States v. Swiss American Bank, supra, at 623-624. All the record evidence shows is that JST has used the services of Stacie Brasco as an independent designer, n15 and that an advertisement of its "Classique Persian" design appeared in one magazine. The "purposeful availment" component, unlike the "relatedness" component, focuses on the intent of defendants being hailed into the forum, and requires that the contact not be due to happenstance. Hasbro, Inc. v. Clue Computing, Inc., supra, at 44-45. n16 None of the contacts of JST relied upon by plaintiff satisfy this "purposeful availment" test. The use [*23]  of Ms. Brasco as an independent contractor does not count, since that use is, for the reasons set forth above, not "related to" the causes asserted in the complaint. And the single advertisement in the Fabrics & Furnishings International magazine admits of no inference whatsoever that JST "willingly and purposefully avail themselves of the benefits of" the Commonwealth of Massachusetts. As a general rule, advertisements in a national trade magazine which do not target the forum state are insufficient to make out a case of "purposeful availment". Polaroid Corp. v. Feeley, 889 F. Supp. 21, 27 (D.Mass 1995). n17 As previously indicated, for all that the present record shows, there was and is but one copy of that magazine in the Commonwealth of Massachusetts - and that copy is in the possession of the plaintiff. And nothing in that advertisement bears any of the hallmarks suggesting that JST was targeting Massachusetts' consumers. n18 Accordingly, plaintiff has not made out - and cannot make out - a prima facie showing of "purposeful availment" by JST or, for that matter, any of the other named defendants. n19 Plaintiff cannot, accordingly, satisfy the due process component [*24]  of the analysis. n20

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n15 Based on the current record, it is unclear as to whether JST sought the services of Ms. Brasco, or whether Ms. Brasco offered her services to JST. There is certainly no evidence before this court suggesting the former, however, that is,

that JST sought the services of Ms. Brasco.

n16 As observed by that court (Id.):"The purposeful availment test articulated by the plurality in Asahi, and applied by the courts in trademark infringement cases, requires that the defendant's contact with the forum state not be due to happenstance. This requirement goes beyond simple 'foreseeability' to ensure that only those defendants that willingly and purposefully avail themselves of the benefits of a state will be brought to court there." (Emphasis added).

n17 As observed by that court (Id.):Feely correctly notes that, by itself, the mere happenstance that a national advertisement for Feely's Colorado camera store circulates in Massachusetts does not amount to "transacting business" in the state. See Rhodes v. Tallarico, 751 F. Supp. 277, 278 (D.Mass.1990) (Skinner, J.) (national advertisements that are not aimed specifically at customers from Massachusetts are

* * * *

Because Massachusetts courts have held that national advertisements not aimed specifically at Massachusetts residents cannot subject a defendant to jurisdiction in this state, see Rhodes, 751 F. Supp. at 278; A-Connoisseur Transportation, 742 F. Supp. 39, 42, this Court holds that Feely's aggregate contacts are insufficient to constitute purposeful availment of the laws of Massachusetts.

[*25]

n18 For example, there is no reference in the advertisements referred to by the plaintiff indicating a Massachusetts contact for those wishing to buy its [JST's] products. Unlike the case in Hasbro, Inc. v. Clue Computing, Inc., supra, JST did not establish a click and buy web site for any putative buyers - much less Massachusetts buyers. And, again unlike the case In Hasbro, Inc. v. Clue Computing, Inc., supra, that advertisement did not refer to other Massachusetts' consumers as an endorsement of its product.

n19 Since plaintiff does not even suggest - much less make out a prima facie showing - that the contacts of any of the other defendants "related to" the causes of action referred to in the complaint, there is no need to determine whether those other defendants purposefully availed themselves of the benefits of the Commonwealth of Massachusetts. And, in any event, nothing has been proffered, indeed, even pleaded, that any of the remaining defendants purposefully availed themselves of the benefits of the Massachusetts marketplace.

n20 As previously observed, p. 11, United States v Swiss American 274 F.3d 610, the due process component includes the reasonableness sub-component based on the so-called gestalt factors. In the circumstances, there is no occasion to examine these gestalt factors, since that analysis only required when (1) a court has identified contacts which are "related to" the causes of action asserted, and (2) a court has also found that a defendant has purposefully availed himself of the benefits of the forum state. Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999)("Third, if the proponent's case clears the first two hurdles, the court then must analyze the overall reasonableness of an exercise of jurisdiction in light of a variety of pertinent factors that touch upon the fundamental fairness of an exercise of jurisdiction. See United Elec. Workers, 960 F.2d at 1088 (discussing this aspect of the inquiry and dubbing these factors the 'Gestalt factors'). An affirmative finding on each of the three elements of the

test is required to support a finding of specific jurisdiction.")(Emphasis added). In this case, plaintiff has failed on both of these predicate steps.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

## [*26]

The Rule or Statutory Authorization Component

*HN7*The second major component of a "specific" jurisdiction analysis is the rule or statutory authorization component - that is, does a rule or statute authorize the exercise of specific jurisdiction. In this case, although not cited by book and verse by plaintiff, the only statute which authorizes the exercise of jurisdiction in the circumstances of this case is the Massachusetts Long-Arm statute. G.L. c. 223A, § 3.

In this case, plaintiff apparently contends that it has shown that the defendants, one and all, committed acts outside of the Commonwealth of Massachusetts which caused tortious injury inside the Commonwealth of Massachusetts within the meaning of Section 3(d) of Chapter 223A. n21

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n21 And that is all that plaintiff says in its Opposition to Defendants' Motion to Dismiss ( # 20, p. 1):

In Paragraph 9 of the Complaint, Plaintiff has set forth the basis of this Court's personal jurisdiction over all of the Defendants, including the basis that Defendants have transacted business in Massachusetts, as well as that Defendants have caused tortious injury in Massachusetts to Plaintiff by selling and delivering fabric to customers outside of Massachusetts... (Emphasis added).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

## [*27]

In the circumstances, however, even if plaintiff could show "tortious injury" inside the Commonwealth of Massachusetts, see note 13, United States v Swiss American 274 F.3d 610, plaintiff has not shown, and cannot show, for the reasons set forth above, that any of the *HN8*defendants "... regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered..." in the Commonwealth of Massachusetts - a required element under Section 3(d) of G.L. 223A. Plaintiff accordingly has not shown that, apart from the "due process" component of the "specific" jurisdiction calculi, that a rule or statute authorizes the exercise of in personam jurisdiction over any of the defendants in the circumstances of this case.

III. Conclusion

For the reasons set forth above, this court recommends that the district judge to whom this case is assigned allow Defendants' Motion to Dismiss ( # 12), and that the case, insofar as it remains viable only as to defendants JST America, Inc., Southern Sales, Inc. and Hillcraft Furniture Co., n22 be dismissed for want of in personam jurisdiction. n23

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n22 See note 2

**[*28]**

n23 The parties are hereby advised that under the provisions of Rule 72(b) of the Federal Rules of Civil Procedure and Rule 3(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts, any party who objects to these proposed findings and recommendations must file specific and written objections thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this rule shall preclude further appellate review. See Keating v. Secretary of Health and Human Services, 848 F.2d 271 (1st Cir. 1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-379 (1st Cir. 1982); Scott v. Schwelker, 702 F.2d 13, 14 (1st Cir. 1983); see also, Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**[*29]**

Lawrence P. Cohen

UNITED STATES MAGISTRATE JUDGE

Back to Summary Report              ‹PREV ‹2 of 6› NEXT›

**Citation # 2**
**1992 U.S. Dist. LEXIS 9629**

EDWARD R. BOUDREAU, Plaintiff, v. SCITEX CORPORATION LTD., Defendant.

CIVIL ACTION No. 91-13059-Y

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

1992 U.S. Dist. LEXIS 9629

June 25, 1992, Decided

### CASE SUMMARY

**PROCEDURAL POSTURE:**  Defendant former employer filed a motion to dismiss asserting forum non conveniens in plaintiff former employee's action alleging breach of an employment contract. The court ordered the parties to address the matter of personal jurisdiction prior to its consideration of the motion to dismiss.

**OVERVIEW:**  The former employee initiated an action alleging breach of an employment contract. The former employer, an Israel based company filed a motion to dismiss for forum non conveniens. The court held that it had personal jurisdiction over the former employer because the former employer transacted business that was instrumental in forming the employment contract in Massachusetts when it negotiated the former employee's employment contract by way of electronic mail, faxes, and telephone calls, which was also sufficient to satisfy the minimum contacts requirement of the Due Process Clause of the Fourteenth Amendment. The court determined that it was reasonable to litigate the case in Massachusetts because the former employer made purposeful entrance into Massachusetts by initiating employment negotiations in Massachusetts and continued those negotiations between Israel and Massachusetts. The court denied the former employer's motion to dismiss because the burden to the former employer of litigating the case in Massachusetts was equal to former employee litigating the case in Israel.

**OUTCOME:**  The court held that personal jurisdiction over the former employer was proper and it denied the former employer's motion to dismiss for forum non conveniens.

**CORE TERMS:**  personal jurisdiction, conveniens, cause of action, employment contract, motion to dismiss, doctrine of forum, transacting business, alternative forum, electronic mail, telephone, prong, fax, negotiations, sufficient to satisfy, burden of proving, purposeful, comport, Fourteenth Amendment, conveniens motion, prima facie case, process analysis, choice of forum, public interest, forum state, fair play, reasonableness, purposefully, instrumental, transacting, translation

### LexisNexis(TM) Headnotes

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal*

## Jurisdiction

### Civil Procedure > Venue > Forum Non Conveniens

*HN1* The existence of personal jurisdiction must be established before a court may consider the merits of a motion to dismiss that is based on the doctrine of forum non conveniens. Therefore, when a forum non conveniens motion and motions to dismiss for lack of personal jurisdiction are before a court, the court must first consider the jurisdictional objections.

### Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction

*HN2* The burden of proving the facts necessary to sustain jurisdiction is on the plaintiff.

### Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction
### Constitutional Law > Procedural Due Process

*HN3* In determining whether jurisdiction exists, the court must look first to state law and then to the controlling constitutional principles. In Massachusetts, a federal court can assert personal jurisdiction over a foreign defendant in a diversity case only if two requirements are met: (1) at least one prong of the Massachusetts Long-Arm statute, Mass. Gen. Laws ch. 223A, § 3, must be satisfied, and (2) the due process requirements of the Fourteenth Amendment must be fulfilled.

### Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction

*HN4* The Massachusetts Long-Arm Statute, Mass. Gen. Laws ch. 223A, § 3, contains eight clauses detailing the circumstances which justify a court's assertion of personal jurisdiction over a foreign defendant. Under Mass. Gen. Laws ch. 223A, § 3(a) a court may assert personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth.

### Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction

*HN5* Mass. Gen. Laws ch. 223A, § 3(a) is broadly interpreted and easily satisfied. Both federal and state courts have regularly construed the "transacting any business" language of the statute in a generous manner.

### Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction
### Contracts Law > Breach > Causes of Action

*HN6* If a cause of action stems from a contract, the "arising from" requirement of Mass. Gen. Laws ch. 223A, § 3A is met if (1) the cause of action is for a breach of the contract and (2) the business transacted in the Commonwealth was instrumental in the formation of the contract. In addition, if the cause of action is for breach of contract, there is personal jurisdiction over a defendant in the district where the contract was finalized.

### Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction
### Constitutional Law > Procedural Due Process > Scope of Protection

*HN7* The United States Supreme Court has explained, each of the two elements of the due process analysis must be satisfied: (1) the defendant must have purposefully established minimum contacts within the forum state and (2) the exercise of jurisdiction must be reasonable, that is, it must comport with traditional notions of "fair play and substantial justice." Essentially, with respect to the "minimum contacts/purposeful availment" requirement, a defendant must have been given "fair warning" that a particular activity could subject it to the jurisdiction of a foreign sovereign. The level of contacts required in order to satisfy this requirement varies with the type of personal jurisdiction sought: general or specific. The First Circuit has defined these two types as follows: (1) general jurisdiction exists when the litigation is not directly founded in the defendant's forum-based contacts, but

the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state; (2) specific personal jurisdiction may be asserted where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts. General personal jurisdiction requires a higher threshold of contacts than does specific personal jurisdiction.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*

HN8⬇ Inquiries into whether the exercise of personal jurisdiction is permissible in a particular case are sensitive to the facts of each case.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
*Constitutional Law > Procedural Due Process > Scope of Protection*

HN9⬇ For the purposes of determining reasonableness, the defendant's contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." The other factors the Court may consider are: the burden on the defendant caused by appearing locally; the forum state's interest in adjudicating the dispute; the shared interest of all states involved in furthering substantive social policies; the plaintiff's interest in obtaining convenient and effective relief; and the interstate judicial system's interest in resolving the controversy efficiently.

*Civil Procedure > Venue > Forum Non Conveniens*

HN10⬇ Two requirements must be satisfied in order for a defendant to prevail in a motion to dismiss based on the doctrine of forum non conveniens: (1) an alternative forum must be able to assert jurisdiction and (2) trial in the chosen forum must be oppressive and vexatious to either the defendant or the judicial system. The overarching principle which must guide this analysis, however, is the United States Supreme Court's declaration that the plaintiff's choice of forum should rarely be disturbed. In order to demonstrate the existence of an alternative forum, the defendant bears the burden of proving that: (1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly.

*Civil Procedure > Venue > Forum Non Conveniens*

HN11⬇ The defendant must establish that the private and public interests weigh heavily on the side of trial in the foreign forum. The United States Supreme Court has identified numerous private and public interest factors that ought to be weighed in the equation. The private interest factors include: relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; all other practical problems that make trial of a case easy, expeditious and inexpensive; and questions as to the enforceability of a judgment if one is obtained. The public interest factors include: the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in application of foreign laws; and the unfairness of burdening citizens in an unrelated forum with jury duty.

**COUNSEL:  [*1]** For the Plaintiff, Ernest W. Piper, Jr., 256 Friend Street, Boston, MA 02114, 617-523-0008.

For the Defendant, Martha J. Zackin, Testa, Hurwitz & Thibeault, 53 State Street, Exchange Place, Boston, MA 02109, 617-248-7000.

**JUDGES:** YOUNG

**OPINIONBY:** WILLIAM G. YOUNG

**OPINION:** MEMORANDUM AND ORDER

YOUNG, D.J.

The plaintiff, Edward Boudreau ("Boudreau"), seeks monetary damages from the defendant, Scitex Corporation ("Scitex"), for Scitex' alleged breach of Boudreau's employment contract. Scitex filed this motion to dismiss, arguing that the common law doctrine of forum non conveniens mandates that the instant case should properly be heard in Israel, rather than in the District of Massachusetts. Although Scitex sought in its initial papers to reserve the question of personal jurisdiction until a later time, this Court, at the hearing held on February 7, 1992, ordered both parties to address the matter of personal jurisdiction prior to this Court's consideration of the merits of the motion to dismiss.

*HN1*The existence of personal jurisdiction must be established before a court may consider the merits of a motion to dismiss that is based on the doctrine of forum non conveniens. See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 504 (1947) [*2] ("The doctrine of forum non conveniens can never apply if there is absence of jurisdiction or mistake of venue."); see also Allstate Life Ins. Co. v. Linter Group Ltd., 782 F. Supp. 215, 219 (S.D.N.Y. 1992) ("[Gulf Oil] indicates that a court may not consider a forum non conveniens motion unless there is subject matter jurisdiction over the case, personal jurisdiction over the parties, and proper venue."); Lynch v. Sunflower Airlines, Ltd., No. 90-7948, 1991 WL 276015, at *3 n.1 (E.D. Pa. Dec. 18, 1991) ("Since I find that this court lacks jurisdiction over defendant, I need not reach defendant's alternative argument that the action should be dismissed on forum non conveniens grounds."); Prentice v. Prentice Colour, Inc., 779 F. Supp. 578, 589 (M.D. Fla. 1991) ("Defendant makes its argument under the doctrine of forum non conveniens; however, with personal jurisdiction lacking, the doctrine of forum non conveniens cannot apply."). Therefore, "when a forum non conveniens motion and motions to dismiss for lack of personal jurisdiction are before a court, the court must first consider the jurisdictional objections." Allstate Life Ins., 782 F. Supp. at 219. [*3]

While Scitex asserts that this Court lacks personal jurisdiction over it, Boudreau maintains that Scitex established sufficient contacts with Massachusetts during the negotiations about his employment contract to confer personal jurisdiction upon this Court. This Court here considers both the threshold matter of personal jurisdiction and also the substantive merits of the motion to dismiss for forum non conveniens.

Personal Jurisdiction

Boudreau bears the burden of proving that this Court has personal jurisdiction over Scitex. American Express Int'l, Inc. v. Mendez-Capellan, 889 F.2d 1175, 1178 (1st Cir. 1989) *HN2* ("The burden of proving the facts necessary to sustain jurisdiction is on the plaintiff."); see also Landmark Bank v. Machera, 736 F. Supp. 375, 380 (D. Mass. 1990) ("When a defendant challenges personal jurisdiction, the burden of proof is on the plaintiff . . . ."). Boudreau bears the burden of establishing, by relying on affirmative evidence and not merely the pleadings, a prima facie case indicating that this Court does have personal jurisdiction over the defendant. Landmark Bank, 736 F. Supp. at 380; [*4] see also Home Owners Funding Corp. of Am. v. Century Bank, 695 F. Supp. 1343, 1344 (D. Mass. 1988). In the instant case, Boudreau submitted his own affidavit in support of both his assertion of personal jurisdiction and also his opposition to Scitex' motion to dismiss. That affidavit is sufficient to satisfy Boudreau's burden of presenting a prima facie case for jurisdiction.

*HN3*In determining whether jurisdiction exists, this Court must look first to state law and

then to the controlling constitutional principles. Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 981 (1st Cir. 1986). In Massachusetts, a federal court can assert personal jurisdiction over a foreign defendant in a diversity case only if two requirements are met: (1) at least one prong of the Massachusetts Long-Arm statute must be satisfied, and (2) the due process requirements of the Fourteenth Amendment must be fulfilled. U.S.S. Yachts, Inc. v. Ocean Yachts, Inc., 894 F.2d 9, 11 (1st Cir. 1990).

*HN4* The Massachusetts Long-Arm Statute, Mass. Gen. L. ch. 223A § 3, contains eight clauses detailing the circumstances which justify a court's assertion of **[*5]** personal jurisdiction over a foreign defendant. In the instant case, the parties and this Court concur that only the first clause could possibly pertain. Under section 3(a), a court may assert personal jurisdiction "over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth." Mass. Gen. L. ch. 223A § 3(a) (1990). Accordingly, in order to establish personal jurisdiction under section 3(a), Boudreau must show both that Scitex transacted business in the Commonwealth and also that the present cause of action arises from that transaction of business. Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 6 (1979).

The weight of precedent supports finding that section 3(a) is satisfied by the instant circumstances. In general, *HN5* section 3(a) is broadly interpreted and easily satisfied. Landmark, 736 F. Supp. at 383. "Both federal and state courts have regularly construed the 'transacting any business' language of the statute in a generous manner." United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., No. 91-1824, **[*6]** 1992 WL 62733, at *5 (1st Cir. March 30, 1992) ("United Electrical"). Less than three months ago in United Electrical, the First Circuit reviewed the recent case law on this issue. That review provides ample support for this Court's conclusion that Scitex was transacting business in the Commonwealth when it negotiated Boudreau's employment contract by way of electronic mail, fax communications and telephone calls. See, e.g., Hahn v. Vermont Law School, 698 F.2d 48, 51 (1st Cir. 1983) (holding that mailing application information and acceptance letter constituted transacting business); Landmark Bank, 736 F. Supp. at 383-84 (holding that making telephone call and sending correspondence to Massachusetts amounted to transacting business); Ross v. Ross, 371 Mass. 439, 441 (1976) (holding that purposeful acts by individual, whether personal, private, or commercial, are sufficient to satisfy requirement of transacting business).

As for the clause in section 3 which requires that the cause of action arise from the business that was transacted in the Commonwealth, that clause is also satisfied by the instant **[*7]** circumstances. In general, *HN6* if a clause of action stems from a contract, as in this case, the "arising from" requirement is met if (1) the cause of action is for a breach of the contract and (2) the business transacted in the Commonwealth was instrumental in the formation of the contract. Hahn, 698 F.2d at 51. In addition, if the cause of action is for breach of contract, there is personal jurisdiction over a defendant in the district where the contract was finalized. See Carlson Corp. v. University of Vermont, 380 Mass. 102, 105 (1980). Boudreau accepted the contract while he still resided in Massachusetts. Furthermore, the negotiations which occurred through electronic mail, fax communications, and telephone calls were instrumental in the formation of Boudreau's employment contract. Accordingly, this Court rules that both prongs of section 3(a) of the Massachusetts Long-Arm Statute have been satisfied.

The second prong of the personal jurisdiction analysis must, however, also be satisfied; i.e., would the Court's assertion of personal jurisdiction over Scitex comport with the mandates of the Due Process clause of the Fourteenth **[*8]** Amendment? As *HN7* the Supreme Court has explained, each of the two elements of the due process analysis must be satisfied: (1) the defendant must have purposefully established minimum contacts within the forum state and (2) the exercise of jurisdiction must be reasonable, that is, it must comport with traditional

notions of "fair play and substantial justice". <u>Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985).</u>

Essentially, with respect to the "minimum contacts/purposeful availment" requirement, a defendant must have been given "fair warning" that a particular activity could subject it to the jurisdiction of a foreign sovereign. <u>Id. at 472.</u> The level of contacts required in order to satisfy this requirement varies with the type of personal jurisdiction sought: general or specific. See <u>Donatelli v. Nat'l Hockey League, 893 F.2d 459, 462-63 (1st Cir. 1990).</u>

The First Circuit has defined these two types as follows: General jurisdiction exists when the litigation is not directly founded in the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, **[*9]** unrelated to the suit, in the forum state . . . .

Specific personal jurisdiction may be asserted where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts."

United Electric, 1992 WL 62733 at *7 (citation omitted). General personal jurisdiction requires a higher threshold of contacts than does specific personal jurisdiction. See <u>Donatelli, 893 F.2d at 463.</u>

It is evident in the instant case that only specific personal jurisdiction is sought. Despite Scitex' assertions to the contrary, this Court adopts the plaintiff's framing of the case: it is a cause of action premised on a breach of an employment contract. It is not, as Scitex would characterize it, a dispute about Boudreau's visa classification while in Israel. Accordingly, Scitex' contention that Boudreau is actually challenging a contract that was modified in Israel, and not the original employment contract, must be rejected.

"Generally speaking, *HN8*⚓inquiries into whether the exercise of personal jurisdiction is permissible in a particular case are sensitive to the facts of each case." <u>Good Hope, 378 Mass. at 2</u> (citation omitted). **[*10]** The undisputed facts in the present case justify this Court's conclusion that Scitex had the requisite minimum contacts with Massachusetts to justify an assertion of specific personal jurisdiction. Scitex and Boudreau negotiated Boudreau's employment contract through telephone calls, fax communications, and electronic mail between Israel and Massachusetts. These communications are sufficient to satisfy the minimum contacts requirement for due process.

Having decided that Scitex purposefully established minimum contacts with Massachusetts, this Court must also ensure that the reasonableness component of the due process analysis is satisfied. See <u>Burger King, 471 U.S. at 476-78;</u> see also <u>Good Hope, 378 Mass. at 7.</u> *HN9*⚓For the purposes of this reasonableness determination, Scitex' contacts "may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" <u>Burger King, 471 U.S. at 476</u> (citation omitted). The other factors the Court may consider are: the burden on the defendant caused by appearing locally; the forum state's interest **[*11]** in adjudicating the dispute; the shared interest of all states involved in furthering substantive social policies; the plaintiff's interest in obtaining convenient and effective relief; and the interstate judicial system's interest in resolving the controversy efficiently. <u>Burger King, 471 U.S. at 476-77.</u>

Scitex argues that it would be forced to bear an unduly heavy burden if it were required to litigate this case in Massachusetts. The company asserts that all of the relevant documents not only are physically located in Israel, but also are written in Hebrew and would need to be translated. In addition, Scitex has expressed concern about the costs of transporting

witnesses from Israel to Massachusetts.

Boudreau would have the same complaints, however, if this case were transferred to Israel. Furthermore, the following facts concerning the extent of Scitex' purposeful entrance into the forum indicate that it is fair and reasonable for Boudreau to require Scitex to defend this case in Massachusetts: 1) Scitex employee Yoav Chelouche visited Boudreau in Massachusetts and initiated the employment negotiations and (2) these negotiations continued between Israel **[\*12]** and Massachusetts for approximately six months via telephone calls (many of them presumably initiated by Scitex), fax communications, and electronic mail.

For these reasons considered in light of the entire record before it, this Court rules that it has personal jurisdiction over Scitex for the purposes of the instant cause of action.

Forum non conveniens

The First Circuit follows the forum non conveniens analysis established by the Supreme Court in a line of cases beginning with Gulf Oil. See, e.g., Howe v. Goldcorp Inv., Ltd., 946 F.2d 944 (1st Cir. 1991), cert. denied, 112 S. Ct. 1172 (1992); Mercier v. Sheraton Int'l, Inc., 935 F.2d 419 (1st Cir. 1991). These cases identify *HN10* two requirements which must be satisfied in order for a defendant to prevail in a motion to dismiss based on the doctrine of forum non conveniens: (1) an alternative forum must be able to assert jurisdiction and (2) trial in the chosen forum must be oppressive and vexatious to either the defendant or the judicial system. Mercier, 935 F.2d at 423-24. The overarching principle which must guide this analysis, **[\*13]** however, is the Supreme Court's declaration that "the plaintiff's choice of forum should rarely be disturbed." Gulf Oil, 330 U.S. at 508; see also Howe, 946 F.2d at 950; Mercier, 935 F.2d at 424.

In order to demonstrate the existence of an alternative forum, the defendant bears the burden of proving that: "(1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly." Mercier, 935 F.2d at 424 (citation omitted). In the instant case, Boudreau conceded in his brief that Israel is an alternative forum. Accordingly, this Court need go no further on that prong of the analysis and turns to the issue of whether the balance of judicial efficiency and convenience weighs in favor of litigating the case in the alternative forum.

Scitex *HN11* "must establish that the private and public interests weigh heavily on the side of trial in the foreign forum." Id. (quoting In re Air Crash Disaster Near New Orleans, 821 F.2d 1147, 1164 [5th Cir. 1987]). The Supreme Court has identified numerous private and public interest factors **[\*14]** which ought be weighed in the equation. Id. The private interest factors include: relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; . . . all other practical problems that make trial of a case easy, expeditious and inexpensive [and] questions as to the enforceability of a judgment if one is obtained.
Id. (quoting Gulf Oil, 330 U.S. at 508). The public interest factors include: the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in application of foreign laws; and the unfairness of burdening citizens in an unrelated forum with jury duty.
Id. (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 [1981]).

In the instant case, the translation and **[\*15]** travel expenses which Scitex must bear in litigating the case in Massachusetts are roughly equal to those which Boudreau would have to bear if the case were to proceed in Israel. See id. at 428. This Court does recognize the

difficulties inherent in applying Israeli law to the instant litigation but considers that the adversary process can illumine what is, after all, an action on a commercial contract. After weighing all of the private and public factors on each side, this Court defers to the plaintiff's choice of forum, since that choice is to be disturbed only rarely. See Howe, 946 F.2d at 950 (citing Gulf Oil, 330 U.S. at 507).

Accordingly, Scitex' motion to dismiss is DENIED. To protect the parties from burdensome discovery, it is ordered that the deposition of Scitex, if any, shall take place in Israel, that the depositions of other parties and witnesses shall take place where they reside, that all documents shall be produced where located, and that Boudreau shall bear the expense of all translations.

SO ORDERED.

WILLIAM G. YOUNG

UNITED STATES DISTRICT JUDGE

Back to Summary Report          PREV 4 of 6 NEXT

Back to Summary Report                    ◄PREV 6 of 6 ►

**Citation # 3**
**2001 U.S. Dist. LEXIS 7334**


ALFRED PIKE, Plaintiff v. CLINTON FISHPACKING, INC., GOOD SHEPARD FISHERIES INC.,
ROBERT T. CABRAL, F/V PROVIDER Official No.: 599943, PROVIDER, INC. AND F/V
PROVIDER Official No.: 290638, Defendants.

CIVIL ACTION NO. 00-10179-RCL

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

2001 U.S. Dist. LEXIS 7334


May 31, 2001, Decided

**DISPOSITION:** **[*1]** Plaintiff's Motion for Reconsideration and Opposition to Defendants'
Motion to Dismiss for Lack of Jurisdiction, dated May 7, 2001, (Docket No. 49) ALLOWED.
Motion of Defendants F/V Provider (O.N. 290638) and Provider, Inc. to dismiss under Fed. R.
Civ. P. 12(b)(2) (Lack of Personal Jurisdiction), Fed. R. Civ. P. 12(b)(5) (Insufficiency of
Service), or Alternatively Fed. R. Civ. P. 12(b)(3) (Improper Venue) (Docket No. 35) DENIED.
Plaintiff's motion for additional discovery denied as moot.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant ship operators and owners, moved pursuant to
Fed. R. Civ. P. 12(b), to dismiss the plaintiff's complaint for lack of personal jurisdiction,
insufficient service of process, and improper venue. Plaintiff, a resident of the forum, was
hired to work on defendants' ship off the coast of Alaska, where he suffered the crushing
and amputation of his hand.

**OVERVIEW:** Plaintiff, a resident of the forum, suffered severe personal injuries while
working on defendants' vessel fishing off the coast of Alaska in international navigable
waters. Plaintiff had been recruited from the forum state. Defendant vessel owner was a
corporation organized under the laws of the State of Washington. Plaintiff asserted
federal question jurisdiction under the Jones Act, 46 U.S.C.S. app. § 688. However, it
was still in issue whether defendants had sufficient minimum contacts with the forum,
and the court noted that defendants had recruited several crewmen from the forum.
There was no reason why plaintiff's tort claim would not be foreseeable from his
contractual relationship with defendants, particularly given the hazards of the fishing
industry. The court found the Constitutional due process requirements for jurisdiction
and service were also met.

**OUTCOME:** Defendants' motion to dismiss for lack of personal jurisdiction, insufficiency
of service, or improper venue was denied and plaintiff's opposition thereto allowed.
Defendants' recruitment of workers from the forum state was enough to make plaintiff's
alleged subsequent injuries on the job foreseeable. Defendants proffered no strong
argument favoring another forum.

**CORE TERMS:** personal jurisdiction, provider, resident, Fourteenth Amendment, long-arm, motion to dismiss, proximate cause, relatedness, venue, proffer, federal question, foreseeable, solicitation, recruited, fishermen, doctrine of forum, forum state, gestalt, conveniens, hotel, purposeful, lack of personal jurisdiction, exercise of jurisdiction, insufficiency of service, contractual, exercise personal jurisdiction, reconsideration, effective, captain, Jones Act

## LexisNexis(TM) Headnotes

**Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss**

*HN1* For the purpose a defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(2), well-pleaded facts alleged in the complaint are deemed to be true, and all reasonable inferences therefrom are viewed in the plaintiff's favor.

**Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction**

*HN2* It is well-established that it is a plaintiff who bears the burden of proving the facts upon which the existence of personal jurisdiction depends. The most commonly used method of determining a motion to dismiss for want of personal jurisdiction is for the district court to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction. This means that the plaintiff must go beyond the pleadings and make affirmative proof. However, the district court is not acting as a factfinder; rather, it accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law.

**Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction**

*HN3* Amenability to extra-territorial personal jurisdiction ultimately is a question of due process.

**Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Question Jurisdiction**

*HN4* When a district court's subject-matter jurisdiction rests wholly or in part on the existence of a federal question, the constitutional limits of the court's personal jurisdiction are drawn in the first instance with reference to the Due Process clause of the Fifth Amendment. In the First Circuit, it is well established that the Fifth Amendment permits a federal court to exercise personal jurisdiction over a defendant in a federal question case if that defendant has sufficient contacts with the United States as a whole.

**Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction**

*HN5* The U.S. Constitution requires only that the defendant have the requisite minimum contacts with the United States, rather than with the particular forum state.

**Civil Procedure > Pleading & Practice > Service of Process**

*HN6* Before a federal court may exercise personal jurisdiction over a defendant in a federal question case, there must be authorization for service of summons on the defendant. In the absence of a federal statute authorizing service of process, Fed. R. Civ. P. 4(e) directs that service may be effected in any judicial district of the United States, pursuant to the law of the state in which the district court is located.

**Admiralty Law > Personal Injuries > Jones Act**

*HN7* The Jones Act, 46 U.S.C.S. app. § 688, does not contain a provision for service of process.

**Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction**

*HN8* In Massachusetts, a court may exercise personal jurisdiction over a foreign defendant if such jurisdiction is authorized by state statute and its exercise does

not offend the Due Process Clause of the Fourteenth Amendment.

### Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction

*HN9*⚖ The Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3, establishes jurisdiction when the claim arises from a person's transacting any business in this commonwealth. To establish jurisdiction under Mass. Gen. Laws ch. 223A, § 3(a), a plaintiff must proffer evidence tending to show two things: the defendant transacted business in Massachusetts, and the plaintiff's claim arose from the transaction of business by the defendant.

### Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction

*HN10*⚖ As a general rule, the purposeful and successful solicitation of business from residents of the Commonwealth of Massachusetts, by a defendant or its agent, will suffice to satisfy the transacted business requirement of Mass. Gen. Laws ch. 223A, § 3.

### Torts > Negligence > Duty > Duty Generally

*HN11*⚖ Logically, there is no reason why a tort cannot grow out of a contractual contact.

### Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits

*HN12*⚖ Compliance with the federal constitutional standard for jurisdiction over a defendant involves a more extensive showing than the long-arm statute. That showing has three aspects: First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the gestalt factors, be reasonable.

### Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits

*HN13*⚖ A defendant who has maintained a continuous and systematic linkage with the forum state brings himself within the general jurisdiction of that state's courts in respect to all matters, even those that are unrelated to the defendant's contacts with the forum.

### Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits

*HN14*⚖ The United States Court of Appeals for the First Circuit has held that the proximate cause standard comports with the relatedness inquiry because it so easily correlates to foreseeability, a significant component of the jurisdictional inquiry.

### Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits

*HN15*⚖ The gestalt factors to determine whether the exercise of jurisdiction are reasonable, are as follows:

(1) the defendants' burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

### Civil Procedure > Venue > Change of Venue in Federal Courts

*HN16*⚖ See 28 U.S.C.S. § 1404(a).

### Civil Procedure > Venue > Change of Venue in Federal Courts

*HN17*⚖ The decision to change venue is in the trial judge's discretion. The defendant must bear the burden of proving both the availability of an adequate alternative forum

and that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum. The plaintiff's choice of forum will be disturbed only rarely.

**COUNSEL:** John P. LeGrand, John P. LeGrand & Associates, P.C., Somerville, MA, for Albert Pike, Plaintiff.

Keith B. Kyle, Law Office of Keith B. Kyle, Stephen T. Morrissey, Law Office of Stephen T. Morrissey, Wakefield, RI, for Good Shepherd Fishers, Inc., Robert T. Cabral, F/V Provider, Official, Defendants.

William Hewig, III, Kopelman & Paige, P.C., Boston, MA, for Provider, Inc. and F/V Provider, Defendants.

**JUDGES:** Reginald C. Lindsay, United States District Judge.

**OPINIONBY:** Reginald C. Lindsay

**OPINION:** MEMORANDUM ORDER ON PLAINTIFF'S MOTION FOR RECONSIDERATION AND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION

LINDSAY, District Judge.

The Defendants, Provider, Inc. and F/V **[*2]** Provider (Official No. 290638) (collectively, "defendants"), have moved this court, pursuant to Fed. R. Civ. P. 12(b), to dismiss the plaintiff's complaint for lack of personal jurisdiction, insufficient service of process, and improper venue. (Docket No. 31). In addition, the plaintiff, Alfred Pike, has sought leave to serve additional requests for production of documents on the defendant Provider, Inc. (Docket No. 28). The defendants have moved for a protective order as to the discovery motion. (Docket No. 37). For the reasons stated on the record at the hearing of this matter on April 30, 2001, this court granted, without prejudice, the defendants' motion to dismiss for lack of personal jurisdiction, insufficient service of process, and improper venue. However, the court allowed the plaintiff until May 8, 2001 to submit any new filings on the matter of jurisdiction. On May 7, 2001, the plaintiff filed a Motion for Reconsideration and Opposition to Defendants' Motion to Dismiss for Lack of Jurisdiction with supporting affidavits. (Docket No. 49). For the reasons stated below, this court grants the plaintiff's motion for reconsideration and, upon reconsideration, now denies the defendants' **[*3]** motion to dismiss.

Background

On January 31, 2000, the plaintiff filed his original complaint alleging that the defendants, Clinton Fish Packing, Inc. ("Clinton Fish Packing"), Good Shepard Fisheries, Inc. ("Good Shepard"), Robert Cabral, and F/V Provider, Official Number 599943 ("Provider 59943"), caused severe personal injuries to the plaintiff while he was fishing off the coast of Alaska. The plaintiff alleged eighteen counts in the original complaint, asserting claims under the Jones Act, 46 U.S.C. App. § 688, for negligence, and under the general maritime law for unseaworthiness and for maintenance and cure. On May 23, 2000, the plaintiff filed an amended complaint. The amended complaint alleges essentially the same claims (Counts 19-24) against two additional defendants: Provider Inc. and F/V Provider, Official Number 290683 ("F/V Provider"). On October 18, 2000, Provider, Inc. and F/V Provider filed a motion to dismiss for lack of personal jurisdiction, insufficiency of service, and improper venue.

*HN1*☞For the purpose of the defendants' motion to dismiss, the well-pleaded facts alleged in the complaint are deemed to be true and all reasonable inferences **[*4]** therefrom are

viewed in the plaintiff's favor. See _Tag/Icib Services, Inc. v. Pan American Grain Co., Inc._ 215 F.3d 172, 175 (1st Cir. 2000). The facts as alleged in the complaint are brief. This action arises from injuries suffered by the plaintiff while on board the F/V Provider. The plaintiff is a resident of New Bedford. See Original Complaint P 1. On or about August 12, 1999, the plaintiff was an employee of Clinton Fish Packing, working on the F/V Provider, which is owned by Provider, Inc. _Id._ P 3. At the time relevant to the complaint, the F/V Provider was twelve hours off the Alaskan coast in international navigable waters. See Plaintiff's Opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or Improper Venue ("Plaintiff's Opposition"). The plaintiff suffered severe and painful injuries while in the performance of his duties. _Id._ P 4. Specifically, the plaintiff's hand was crushed and amputated. See Plaintiff's Opposition.

Aside from the well-pleaded facts of the complaint, the plaintiff has proffered affidavit and deposition testimony for the purpose of establishing the facts necessary for this court to determine **[*5]** whether it may exercise personal jurisdiction over the defendants. In sum, the plaintiff presents evidence that between 1982 and the time of the plaintiff's injury on August 12, 1999, the defendants purchased gear and supplies from Massachusetts, solicited employees in Massachusetts, including the plaintiff, and serviced their vessels in Massachusetts. The following facts are relevant to the defendants' motion. At the time of the plaintiff's injury, the captain of the F/V provider was Michael Andrews. See Deposition of Michael Andrews ("Andrews Dep.") p. 36. Between 1997 and 1999, Captain Andrews was charged with the duty of finding men to fish on the F/V Provider in Alaska when needed. See Andrews Dep. pgs. 76-77. To find and hire fishermen, Captain Andrews would call Roy Enicson at Eastern Fisheries in New Bedford, Massachusetts in an ongoing fashion. See Andrews Dep. p. 76. Indeed, a significant proportion of the men fishing aboard the F/V Provider were recruited from Massachusetts. In the plaintiff's case, he was told by the general manager of Eastern Fisheries in New Bedford, Steve Luzon, that the owner of the F/V Provider, Mark Kandianis, was recruiting fishermen **[*6]** to go to Alaska for the summer season. See Affidavit of Albert Pike ("Pike Aff.") P 7. After speaking with Luzon, the plaintiff approached Roy Enicson of Eastern Fisheries who told the plaintiff that Kandianis had been "constantly calling me for crewmembers." Pike Aff. P 9. Enicson gave the plaintiff Kandianis' telephone number. See Pike Aff. P 11. The plaintiff contacted Kandianis in Washington based upon Enicson's statements that Kandianis was recruiting. See Pike Aff. P 12. A letter of recommendation signed by Enicson was faxed to Kandianis that day. See Pike Aff. P 14. The next day, the plaintiff received a call from Captain Andrews in Washington hiring the plaintiff. See Pike Aff. P 15. Based upon the oral agreement, the plaintiff traveled to Alaska to meet the F/V Provider by June 16, 1998. See Pike Aff. P 16-17.

Discussion

A. Personal Jurisdiction

_HN2_ It is well-established that it is the plaintiff who bears the burden of proving the facts upon which the existence of personal jurisdiction depends. See _Foster-Miller, Inc. v. Babcock & Wilcox Canada_, 46 F.3d 138, 145 (1st Cir. 1995). "The most commonly used method of determining **[*7]** a motion to dismiss for want of personal jurisdiction is for the district court to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." See _Boit v. Gar-Tec Products, Inc._, 967 F.2d 671, 676 (1st Cir. 1992). This means that the plaintiff "must go beyond the pleadings and make affirmative proof." _Id._ at 675 (quoting _Chlebda v. H.E. Fortna & Bro., Inc._ 609 F.2d 1022, 1024 (1st Cir. 1979)). However, "the district court is not acting as a factfinder; rather, it accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law." _United Electrical Radio and Machine Workers of America v. 163 Pleasant Street Corp._, 987 F.2d 39, 44 (1st Cir. 1993).

*HN3*Amenability to extra-territorial personal jurisdiction ultimately is a question of due process. In arguing whether this court has personal jurisdiction over the defendants consistent with due process, both parties analyze this problem in terms of a state's power to summon an out-of-state defendant with respect to the restraints of the **[*8]** due process standards under the Fourteenth Amendment. This case, however, is based on federal question jurisdiction. " *HN4*When the district court's *subject-matter* jurisdiction rests wholly or in part on the existence of a federal question, the constitutional limits of the court's *personal* jurisdiction are drawn in the first instance with reference to the due process clause of the fifth amendment." Lorelei Corp. v. County of Guadalupe, 940 F.2d 717, 719 (1st Cir. 1991) (emphasis in original). In the First Circuit, it is well-established that the Fifth Amendment "permits a federal court to exercise personal jurisdiction over a defendant in a federal question case if that defendant has sufficient contacts with the United States as a whole." Id. (quoting Whistler Corp. v. Solar Electronics, Inc., 684 F. Supp. 1126, 1128 (D. Mass. 1988) (citing cases)). See United Electrical, Radio and Machine Workers of America v. 163 Pleasant Street Corp., 960 F.2d 1080, 1085 (1st Cir. 1992) (" *HN5*The Constitution requires only that the defendant have the requisite 'minimum contacts' with the United States, rather than with the particular forum state"). **[*9]** In this case, it cannot be contested that the defendants have sufficient minimum contacts with the United States to satisfy this broad due process standard of the Fifth Amendment. The F/V Provider is a boat owned by Provider, Inc., a corporation organized under the laws of the State of Washington. See, e.g., Trans-Asiatic Oil Ltd. v. Apex Oil Co., 743 F.2d 956, 959 (1st Cir. 1984) ("Since [the defendant] is a United States corporation . . . we need not decide to what degree a foreign admiralty defendant must have minimum contacts with the United States to be subject to quasi-in-rem jurisdiction"). The court's jurisdictional inquiry, however, does not end here.

The next step is to determine whether the nationwide scope of personal jurisdiction in a federal question case is limited by Rule 4 of the Federal Rules of Civil Procedure. *HN6*Before a federal court may exercise personal jurisdiction over a defendant in a federal question case, there must be authorization for service of summons on the defendant. See Omni Capital International, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104, 98 L. Ed. 2d 415, 108 S. Ct. 404 (1987). In the absence of a federal **[*10]** statute authorizing service of process, Rule 4 (e) directs that service "may be effected in any judicial district of the United States: (1) pursuant to the law of the state in which the district court is located." Fed. R. Civ. P. 4(e); see also, Omni, 484 U.S. at 108. Here, there is no dispute that the Jones Act does not provide for nationwide service of process. See Handley v. Indiana & Michigan Elec. Co., 732 F.2d 1265, 1270 (6th Cir. 1984) (" *HN7*The Jones Act does not contain a provision for service of process"). Thus, the court is obliged to look to the law of Massachusetts in determining whether the court may assert jurisdiction over the defendants. Herein lies the rub. *HN8*In Massachusetts, a court may exercise personal jurisdiction over a foreign defendant if such jurisdiction is authorized by state statute and its exercise does not offend the Due Process Clause of the Fourteenth Amendment. See Tatro v. Manor Care, Inc., 416 Mass. 763, 772, 625 N.E.2d 549 (1994). Therefore, notwithstanding that this is a federal question case, the Fourteenth Amendment "minimum contacts" analysis acts indirectly on the exercise of jurisdiction in **[*11]** this case because the Massachusetts law is subject to Fourteenth Amendment limitations.

*HN9*The Massachusetts long-arm statute, M.G.L. c. 223A, § 3, made applicable by virtue of Fed. R. Civ. P. 4(e), establishes jurisdiction when the claim arises from the person's "(a) transacting any business in this commonwealth." n1 To establish jurisdiction under § 3(a), the plaintiff must proffer evidence tending to show two things: the defendant "transacted business" in Massachusetts, and the plaintiff's claim "arose from" the transaction of business by the defendant. See Tatro, 416 Mass. at 767.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 For purposes of the long-arm statute, a "person" includes "a corporation, partnership, association or any other legal or commercial entity." M.G.L. c. 223A, § 1.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

HN10 As a general rule, the purposeful and successful solicitation of business from residents of the Commonwealth, by a defendant or its agent, will suffice to satisfy the "transacted business" requirement. *Id.* Indeed, the defendants do not dispute that **[*12]** the plaintiff has proffered evidence that the defendants have "transacted business" in Massachusetts in two distinct ways. First, the defendants concede that the hiring of the plaintiff, who is a Massachusetts resident, was itself a Massachusetts transaction. Second, the defendants admit that the plaintiffs have proffered evidence about the purchase by the defendants of fishing boat equipment and gear from several Massachusetts suppliers. Therefore, the thrust of the defendants' motion to dismiss is that the plaintiff has failed to proffer evidence that demonstrates that the plaintiff's claim "arises from" either of these transactions. Specifically, the defendants argue that the plaintiff's injuries did not arise from the defendants' transaction of business in Massachusetts because the injury of which the plaintiff complained arose, not out of the contract of employment, but out of alleged negligence.

In *Tatro*, the Supreme Judicial Court ("SJC") rejected the notion that a tort claim cannot arise from a contractual transaction. *See* 416 Mass. at 770 (" HN11 Logically, there is no reason why a tort cannot grow out of a contractual contact") (quoting *Prejean v. Sonatrach, Inc.,* 652 F.2d 1260, 1270 n. 21 (5th Cir. 1981)). **[*13]** There, the plaintiff claimed personal injuries as a result of a slip and fall in a bathtub in her hotel room in California. She alleged that the defendant was responsible for her injuries because it had violated a duty to provide her with a safe bathtub. The defendant, although having no place of business or agents in Massachusetts, did solicit business from Massachusetts corporations, including the plaintiff. The SJC held that "but for" the defendant's solicitation of business in Massachusetts, and its agreement to provide plaintiff with hotel accommodations in California, the plaintiff would not have been injured in a room of the hotel. Under the SJC's "but for" standard, jurisdiction was permitted because the plaintiff's reservation of a room is considered "the first step in a train of events that results in the personal injury." *See* 416 Mass. at 770.

Here, there can be no doubt that the defendants' decision to contract with the plaintiff for employment was a similar "first step" in his alleged injury. Although the plaintiff "signed aboard" in Alaska, the defendants' decision to accept the plaintiff's employment formed part of an overall purposeful solicitation of employees from **[*14]** Massachusetts. It appears from the plaintiff's proffer that, over the years, between 50% and 90% of the defendants' crew has been recruited from Massachusetts. The plaintiff was no exception. He was recruited by Eastern Fisheries in Massachusetts at request of the owner of the F/V Provider, Mark Kandianis. Roy Enicson of Eastern Fisheries told the plaintiff that Kandianis had been "constantly calling me for crewmembers." Pike Aff. P 9. Based on Kandianis' efforts to secure fishermen through Roy Enicson, the plaintiff contracted with the defendants. It simply strains the literal requirements of the long-arm statute to suggest that a foreign corporation can continuously and substantially contract with Massachusetts residents for employment in Alaska and then seek to avoid personal jurisdiction in Massachusetts when those employees suffer injuries that arise from their employment. *See* *id.* at 771 ("We doubt that the Legislature intended to foreclose a resident of Massachusetts, injured in another State, from

seeking relief in the courts of the Commonwealth when the literal requirements of the long-arm statute have been satisfied"). Thus, the court finds the requirements of the Massachusetts **[\*15]** long-arm statute to have been met in this case.

The next task is to determine whether the plaintiff has met his burden of establishing that requiring the defendants to litigate the case in Massachusetts comports with the strictures of the Constitution. The First Circuit has explained that *HN12*compliance with the federal constitutional standard involves a somewhat more extensive showing than the long-arm statute. "That showing has three aspects: First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable." *Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001)* (citing *United Electrical, Radio & Machine Workers of America, 960 F.2d at 1089).* n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 The tripartite analysis stated herein is associated with the court's exercise of specific personal jurisdiction over the defendant. *See Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999).* Of course, *HN13*a defendant who has maintained "a continuous and systematic linkage with the forum state brings himself within the general jurisdiction of that state's courts in respect to all matters, even those that are unrelated to the defendant's contacts with the forum." *Id.* While the plaintiff mentions in passing that there is "evidence of continuous and consistent contact" between the defendants and Massachusetts, he does not press the argument that general jurisdiction exists in this case. Indeed, at the hearing on this matter on April 30, 2001, the plaintiff agreed that the strenuous requirements for the exercise of general jurisdiction are not met in this case. *See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984).*

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

**[\*16]**

The first aspect of the Fourteenth Amendment inquiry is commonly referred to as the "relatedness test." At first blush, the constitutional standard seems congruous with the state long-arm statute's requirement that the plaintiff's claims "arise from" the defendant's in state transactions. Indeed, the First Circuit once recognized that the two requirements correspond. *See Foster-Miller, 46 F.3d at 144 n. 3* (noting "'arising from' requirement corresponds to relatedness"). It would be reasonable to assume, therefore, that the First Circuit operates under the "but for" standard for relatedness adopted by the SJC in *Tatro.* However, *HN14*the First Circuit has since retreated from the comparison, and has held that "the *proximate cause* standard better comports with the relatedness inquiry because it so easily correlates to foreseeability, a significant component of the jurisdictional inquiry." *Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 715 (1st Cir. 1996)* (emphasis added). The proximate cause standard requires that the defendant's in-state contacts be the foreseeable cause of the plaintiff's injuries. *See id.* The court tempered its pronouncement **[\*17]** by noting that the

proximate cause test for relatedness "is not as rigid" as the familiar tort concept. *Id.*

The decision to adopt the proximate cause standard for the determination of relatedness is significant because the defendants contend that a *contractual* transaction in Massachusetts cannot be the proximate cause of a *tort* in Alaska. The defendants' argument is unavailing. The First Circuit has expressly stated that it sees "no reason why, in the context of a relationship between a contractual or business association and a subsequent tort, the absence of proximate cause *per se* should always render the exercise of personal jurisdiction unconstitutional." *Id.* The First Circuit's "relaxed" view of proximate cause recognizes that the key element of relatedness under the Fourteenth Amendment is foreseeability. For instance, in *Nowak*, the court held that a foreign hotel's solicitation of a Massachusetts company's employees was related to the wrongful death tort resulting from a child's death in the hotel swimming pool. The court adopted the district court's reasoning that the solicitation of business by the foreign hotel "set in motion a chain of reasonably **[*18]** foreseeable events resulting in [the victim's] death." *Id.* at 716. While the court acknowledged that the solicitation of business and the ultimate tort were *not* proximately related, in the traditional sense, the court nevertheless found that the nexus did "represent a meaningful link between [the defendant's] contract and the harm suffered." *Id.* The court concluded that "when a foreign corporation directly targets residents in an ongoing effort to further a business relationship, and achieves its purpose, it may not necessarily be unreasonable to subject that corporation to forum jurisdiction when the efforts lead to a tortious result. . . . If the resident is harmed while engaged in activities integral to the relationship the corporation sought to establish, we think the nexus between the contacts and the cause of action is sufficiently strong to survive the due process inquiry at least at the relatedness stage." *Id.* at 715.

The defendants' recruitment of Massachusetts fishermen is enough to make the harm allegedly suffered here foreseeable. Given the well-known risks of the fishing industry, it cannot be gainsaid that it is foreseeable **[*19]** that a fisherman recruited in Massachusetts might be injured aboard a vessel off the coast of Alaska. Although the defendants are correct to note that the plaintiff bears the burden of proving that the defendants recruited the plaintiff through their Massachusetts contacts, and not just recruited Massachusetts fishermen generally, the plaintiff has met that burden. *See* Pike Aff. PP 6-15. Thus, the plaintiff's proffer is enough to establish for present purposes that Mark Kandianis' efforts to recruit fishermen, including the plaintiff, from Eastern Fisheries in New Bedford was the proximate cause of the plaintiff's injuries.

The second prong of the Fourteenth Amendment analysis is whether the defendants' in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendants' involuntary presence before the state's courts foreseeable. "The purposeful availment requirement ensures that jurisdiction is not premised on 'random, isolated, or fortuitous' contacts with the forum state." *See Nowak,* 94 F.3d at 716 (quoting *Sawtelle v. Farrell,* 70 F.3d 1381, 1391 (1st Cir. 1995)). **[*20]** This means that the defendants' contacts with the forum must be voluntary and such that the defendants should reasonably anticipate being haled into court in Massachusetts. *Id.*

Based on the discussion above, it is clear that the defendants' contacts with Massachusetts were deliberate and not random. Here, the plaintiff's proffer is that the defendants actively sought employees from Massachusetts over a period spanning nearly twenty years. These contacts, designed to bring Massachusetts residents to Alaska, rendered foreseeable the possibility of being haled into a Massachusetts court.

The third and final prong of the Fourteenth Amendment analysis is whether the exercise of jurisdiction must, in light of the so-called gestalt factors, be reasonable. *HN15* The gestalt factors are as follows:(1) the defendants' burden of appearing, (2) the forum state's interest

in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.*See Nowak, 94 F.3d at 717* **[\*21]** (citing *United Electrical, Radio & Machine Workers of America, 960 F.2d at 1088).* "The purpose of the gestalt factors is to aid the court in achieving substantial justice, particularly where the minimum contacts question is very close." *Id.* There is little doubt that the factors tip decidedly in the plaintiff's favor.

First, it would be undoubtedly burdensome for Provider, Inc. to defend itself in Massachusetts. However, it is almost always inconvenient and costly for a party to litigate in a foreign jurisdiction. Therefore, the defendant must demonstrate that "exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way." *94 F.3d at 718* (citation omitted). The defendants have not proffered any reason meeting that standard. As to the second of the gestalt factors, it is clear that Massachusetts has a significant interest in ensuring its residents are not injured by negligence. The defendants have not presented any persuasive argument to the contrary. Third, the plaintiff's interest in convenient and effective relief is clearly served in Massachusetts. The plaintiff is a Massachusetts resident **[\*22]** and this district has significant experience in admiralty cases. Fourth, the most effective resolution of the controversy is in Massachusetts because a large number of the witnesses reside here. And finally, it is not possible to discern any substantive social policies that might be implicated by this litigation.

## B. Insufficiency of Service

The defendants claim that the case should be dismissed for insufficiency of service under the Massachusetts long-arm statute. The defendants claim that because the plaintiff has not fulfilled the requirements of *Fed. R. Civ. P. 4(e)*, which requires that service is effected "pursuant to the law of the state in which the district is located," service was insufficient. The defendants' argument is unavailing. For the reasons state herein, the plaintiff has satisfied the requirements of the long-arm statute and the Fourteenth Amendment.

## C. Improper Venue

The defendants claim that venue is improper and that the case should be transferred to the Western District of Washington under the doctrine of *forum non conveniens*. The defendants cite the transfer of venue statute, *HN16* *28 U.S.C. § 1404(a).* Section 1404(a) states: **[\*23]** "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

A claim of improper venue is raised by a motion to dismiss. *See Fed. R. Civ. P. 12(b)(3).* Indeed, the defendants' motion cites *Fed. R. Civ. P. 12(b)(3).* However, counsel for the defendants stated at the hearing on this matter on April 30, 2001 that the defendants seek to *transfer* venue pursuant to section 1404(a) or the doctrine of *forum non conveniens*. Thus, the court will treat the defendants' motion as a motion for transfer of venue, rather than a motion to dismiss.

The First Circuit has recently stated that "section 1404(a) is a codification of the doctrine of *forum non conveniens.*" *Albion v. YMCA Camp Letts, 171 F.3d 1, 2 (1st Cir. 1999).* n3 *HN17* The decision to change venue is in the trial judge's discretion. *See Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000).* "The defendant must bear the burden of proving both the availability of an adequate alternative forum and that considerations of convenience and judicial efficiency strongly **[\*24]** favor litigating the claim in the alternative forum." *Nowak, 94 F.3d at 719.* The plaintiff's choice of forum will be disturbed only rarely. *See id.*

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 The view that section 1404(a) is the same as the doctrine of *forum non conveniens* is not without controversy. Traditionally, the application of the judicial doctrine of *forum non conveniens* resulted in a final judgment dismissing the action; see *Nowak*, 94 F.3d at 719, whereas a transfer order under § 1404(a) does not end the case but preserves it as against the running of the statute of limitations and for all other purposes. For purposes of this motion, the distinction is not important.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Here, notwithstanding unsupported statements of counsel that this litigation is better held elsewhere, the defendants have failed to proffer any evidence that judicial efficiency strongly favors litigating in Washington. Thus, this court sees no reason to transfer the venue of this matter.

Conclusion

For the reasons state herein, **[*25]** the court orders the following.(1) The Plaintiff's Motion for Reconsideration and Opposition to Defendants' Motion to Dismiss for Lack of Jurisdiction, dated May 7, 2001, is ALLOWED. (Docket No. 49).

(2) The Motion of Defendants F/V Provider (O.N. 290638) and Provider, Inc. to dismiss under Fed. R. Civ. P. 12(b)(2) (Lack of Personal Jurisdiction), Fed. R. Civ. P. 12(b)(5) (Insufficiency of Service), or Alternatively Fed. R. Civ. P. 12(b)(3) (Improper Venue) (Docket No. 35) is DENIED.

(3) The plaintiff's motion for additional discovery is denied as moot, since the discovery was directed to matters pertaining to the personal jurisdiction issues resolved herein.So Ordered.

Reginald C. Lindsay

United States District Judge

Dated: 5/31/01

Back to Summary Report          PREV 6 of 6

Back to Summary Report                PREV 2 of 2 NEXT

**Citation # 1**
**2002 U.S. Dist. LEXIS 1500**

SYMBOL TECHNOLOGIES, INC., Plaintiff v. QUANTUM ASSOCIATES, INC., Defendant

CIVIL ACTION NO. 01-10983-GAO

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

2002 U.S. Dist. LEXIS 1500

January 30, 2002, Decided

**DISPOSITION:** **[*1]** Defendant's motion to transfer venue to the Northern District of California GRANTED.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff sued defendant seeking four declaratory judgments that it had not violated its contracts with defendant and for breach of contract. Defendant moved to dismiss or to transfer venue to the forum where it had subsequently filed suit against plaintiff for, inter alia, breach of contract, breach of the covenant of good faith and fair dealing, and fraud.

**OVERVIEW:** Plaintiff had business locations nation-wide, including one in defendant's preferred forum. Defendant was a small software company that never had more than one full-time employee. The parties entered into a consulting agreement for development of a software application. When problems arose, defendant sent a letter to plaintiff indicating that it intended to file suit, but it would prefer to settle the matter. Plaintiff indicated that it would respond to the settlement proposal, then promptly filed suit. In reviewing defendant's motion to transfer, the court found that both considerations of convenience and the strong inference that plaintiff was forum shopping led to the conclusion that the dispute should be resolved elsewhere. The contracts at issue were governed by the other forum's law, the bulk of the events occurred there, and most of the witnesses were located there. Also, plaintiff was in a better position to bear the cost of litigating in a distant state. Finally, plaintiff's ambush of defendant further tilted the balance of equities in favor of letting defendant proceed in its preferred forum.

**OUTCOME:** The court granted defendant's motion to transfer venue to another forum.

**CORE TERMS:** software, special circumstances, convenience, shopping, breach of contract, motion to transfer, declaratory, venue, balance of convenience, settlement, litigate, bar code, out-of-court, marketing, tracking, package, settle

## LexisNexis(TM) Headnotes

### Civil Procedure > Venue > Change of Venue in Federal Courts
*HN1* When parties file similar actions, the first-filed suit is generally preferred. But a

court may depart from this general preference either when there is a showing of balance of convenience in favor of the second action or when there are special circumstances which justify giving priority to the second. Whether the court decides to dismiss a case for forum non conveniens or to transfer the case to another venue, its decision regarding convenience is guided by concerns of fairness and efficiency, though a motion to transfer is more readily granted. As to the second class of exceptions, there are no specific requirements for when such "special circumstances" exist in the First Circuit. However, according to several district courts, indications of forum shopping qualify as special circumstances.

**Civil Procedure > Venue > Change of Venue in Federal Courts**
**Civil Procedure > Remedies > Declaratory Relief**

HN2⚡Courts are aware that plaintiffs at times try to use the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff in the coercive action.

**Civil Procedure > Venue > Change of Venue in Federal Courts**
**Civil Procedure > Settlements > Settlement Agreements**

HN3⚡When a potential plaintiff makes a good faith effort to settle a case out of court, courts encourage such efforts and look disfavorably on a party seeking to take advantage of such a plaintiff.

**COUNSEL:** For SYMBOL TECHNOLOGIES, INC., Plaintiff: Richard G. Price, Tonkon Torp LLP, Portland, OR.

For SYMBOL TECHNOLOGIES, INC., Plaintiff: Richard L. Nahigian, Sullivan, Sullivan & Nahigian, LLP, Boston, MA.

For QUANTUM ASSOCIATES, INC., Defendant: Jonathan J. Margolis, Rodgers,Powers & Schwartz, Boston, MA USA.

For QUANTUM ASSOCIATES, INC., Defendant: Michael S. Sorgen, Andrea Adam Brott, Law Offices of Michael S. Sorgen, San Francisco, CA.

**JUDGES:** George A. O'Toole, Jr., DISTRICT JUDGE.

**OPINIONBY:** George A. O'Toole, Jr.

**OPINION:** MEMORANDUM AND ORDER

January 30, 2002

O'TOOLE, D.J.

The plaintiff, Symbol Technologies, Inc. ("Symbol"), brought this action against the defendant, Quantum Associates, Inc. ("Quantum"), seeking four declaratory judgments that it did not violate its contracts with Quantum, and making a breach of contract claim against Quantum. In turn, Quantum has moved to dismiss or to transfer venue to the Northern District of California. For the reasons set forth in this memorandum, the defendant's motion to transfer to the Northern District of California is granted.

A. Summary **[*2]** of Facts

Symbol is a Delaware corporation engaged in the design, development, manufacture, and sale of "bar code driven transaction systems" such as bar code scanning devices and hand held computers used to track the movement of shipments. Symbol's principal place of business is in Holtsville, New York, but it maintains several locations nation-wide including

one in Westford, Massachusetts, and one in San Ramon, California. Quantum is a small software and consulting business that has never had more than one full-time employee. Les Goldner is the owner and President of Quantum.

In 1997, Symbol and Quantum entered into a consulting agreement ("1997 Agreement") pursuant to which Quantum was to develop a stand alone "Cross Dock" software application program which would assist users in tracking the movement of packages and freight. In return, Symbol agreed to help market the Cross Dock software. Schedule D to the 1997 Agreement provided that Symbol "agrees to commit to provide to [Quantum] the minimum revenues per year for software modules and related services . . . . Should [Symbol] fail to meet the minimums defined in the attached table, [Quantum] has the right to enter into **[*3]** similar marketing relationship with competitors of [Symbol]." The table attached to Schedule D established a revenue minimum of $ 150,000 for 1998 and $ 250,000 for 1999. The parties disagree whether the terms in Schedule D obligated Symbol to make payments to Quantum, or whether Schedule D merely created an option for Symbol to extend its exclusive marketing arrangement with Quantum. In 1998, Symbol paid Quantum $ 150,000, but it declined to make any payments to Quantum for 1999.

In an effort to sell Quantum's software application, Symbol entered into a deal with Staples, Inc. ("Staples") in Framingham, Massachusetts. Staples was interested in the Cross Dock software, but wanted it to be customized to meet Staples's needs. As a result, Symbol and Quantum entered into a second agreement in 1999 ("1999 Agreement") for the development of software which would meet Staples's particular requirements. After some time, Staples decided that it did not wish to proceed with the software Quantum and Symbol were offering and sought another vendor to provide package tracking services. The parties disagree about what caused the Staples deal to fail.

On April 17, 2001, Quantum's attorney sent **[*4]** a letter to Symbol's attorney, Ariel Dvorkis, indicating that Quantum intended to file a legal action against Symbol for breach of contract of both the 1997 Agreement and the 1999 Agreement, as well as for several other claims. The letter also stated that Quantum hoped Symbol would choose to settle these claims rather than to engage in litigation. Quantum told Symbol it would wait for twenty-one days for Symbol to respond, and then would file a complaint and initiate legal proceedings. On May 3, 2001, Dvorkis responded to Symbol's letter stating that she had been on vacation when Quantum's letter had arrived, but that Symbol was currently reviewing Quantum's claims and proposals. Dvorkis closed her letter stating that she would "make every effort to gather all the pertinent information and advise [sic] so that I may respond to your letter ASAP." Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss or Transfer Venue, Dvorkis Aff, Attach. 2.

Quantum's hopes for an out-of-court resolution were dashed abruptly a month later. On June 8, 2001, Symbol filed this suit against Quantum. As noted, in its complaint Symbol set forth four requests for declaratory judgments regarding Symbol's performance **[*5]** of the 1997 Agreement and the 1999 Agreement, and a claim for damages for breach of the 1997 Agreement. Several weeks later, on July 20, 2001, Quantum filed suit in the Northern District of California against Symbol, claiming for breach of both the 1997 Agreement and the 1999 Agreement, breach of the covenant of good faith and fair dealing, fraud, negligent misrepresentation, and intentional interference with prospective economic advantage, as well as a claim in *quantum meruit*.

Quantum now brings a motion urging that the dispute between it and Symbol is more appropriately resolved through the action in the Northern District of California than through Symbol's action in this court.

B. Proper Venue

*HN1* When parties file similar actions, "the first-filed suit is generally preferred." See <u>Nortek, Inc. v. Molnar, 36 F. Supp. 2d 63, 69 (D.R.I. 1999).</u> But a court may depart from this general preference either when there is "a showing of balance of convenience in favor of the second action" or when "there are special circumstances which justify giving priority to the second." <u>Id. 69-70.</u> Whether the court decides to dismiss a case for *forum non* **[*6]** *conveniens* or to transfer the case to another venue, its decision regarding convenience is guided by concerns of fairness and efficiency, though a motion to transfer is more readily granted. See <u>Norwood v. Kirkpatrick, 349 U.S. 29, 32, 99 L. Ed. 789, 75 S. Ct. 544 (1955).</u> As to the second class of exceptions, the First Circuit has not mandated any specific requirements for when such "special circumstances" exist. <u>Nortek, 36 F. Supp. 2d at 70.</u> However, several district courts have found that indications of forum shopping qualify as special circumstances. See e.g., <u>Davox Corp. v. Digital Sys. Int'l, Inc., 846 F. Supp. 144, 148 (D. Mass. 1993); Bausch & Lomb Inc. v. Alcide Corp., 684 F. Supp. 1155, 1159-60 (W.D.N.Y. 1987); Nortek, 36 F. Supp. 2d at 70.</u> Both considerations of convenience and the strong inference that Symbol's action in the District of Massachusetts was an effort at forum shopping lead to the conclusion that this dispute ought to be resolved by the Northern District of California.

Several factors indicate that a California District Court would be a more convenient forum for resolving this **[*7]** dispute. See <u>Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257-61, 70 L. Ed. 2d 419, 102 S. Ct. 252 (1981)</u> (describing factors bearing on the convenience analysis). First, the contracts at issue between the parties are governed by California law; and a California District Court is better equipped to resolve the legal questions posed by this dispute. Second, the bulk of the events which underlie the dispute took place in California. Both contracts were predominately negotiated in California and Georgia, and several of the key players in this dispute live and work in California. Admittedly, Staples's Massachusetts employees may be needed to provide testimony regarding Symbol's and Quantum's performance under the 1999 Agreement. However, these witnesses likely will have little to say about the central question of what the parties agreed to under the 1999 Agreement. The Staples employees' testimony also will not bear on the dispute under the 1997 Agreement. The center of gravity of this dispute both legally and factually is in California, not in Massachusetts. Third, "the balance of convenience focuses on the comparative financial abilities of the parties and the cost of **[*8]** litigation should be borne by the party in the best position to absorb and spread it." <u>Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 71 (D. Mass. 2001).</u> Symbol is clearly in a better position to litigate in a distant state than Quantum is, especially since Symbol has offices in the state where Quantum would prefer to litigate.

Symbol's case for keeping the case in Massachusetts is further weakened by the strong indication that its decision to file here is an attempt at forum shopping. Four of Symbol's five causes of action are requests for negative declaratory judgments -- that it is not liable to Quantum. *HN2* Courts are aware that plaintiffs at times try to use the Declaratory Judgment Act "to gain a procedural advantage and preempt the forum choice of the plaintiff in the coercive action." <u>Great Am. Ins. Co. v. Houston Gen. Ins. Co., 735 F. Supp. 581, 586 (S.D.N.Y. 1990).</u> A month after Quantum warned Symbol that it planned to file suit for breach of contract, Symbol filed its complaint in this court.

Finally, Symbol's decision to file a complaint when it had given Quantum the impression that it would investigate the possibility of settlement **[*9]** also militates against respecting Symbol's forum preferences. *HN3* When a potential plaintiff makes a good faith effort to settle a case out of court, courts encourage such efforts and look disfavorably on a party seeking to take advantage of such a plaintiff. See <u>Davox, 846 F. Supp. at 148</u> (citing <u>Columbia Pictures Indus., Inc. v. Schneider, 435 F. Supp. 742, 747 (1977)).</u> Dvorkis's letter to Quantum urged Quantum to hold off filing its suit in California while Symbol allegedly investigated the possibility of settlement. Quantum therefore waited for Symbol's out-of-court response to its demands, only to be ambushed by the instant complaint. This conduct

further tilts the balance of the equities in favor of letting Quantum proceed in its preferred forum. See <u>Davox, 846 F. Supp. at 148-49.</u>

Accordingly, Quantum's motion to transfer venue to the Northern District of California is GRANTED.

1/30/02
DATE

George A. O'Toole, Jr.

DISTRICT JUDGE

<u>Back to Summary Report</u>          PREV 2 of 2