UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11683 NG

| | | |
|---|---|---|
| SAMI J. BAGHDADY,<br>　　　　Plaintiff, | )<br>)<br>) | Michael P. Angelini<br>BBO#019340 |
| v. | )<br>) | |
| GEORGE J. BAGHDADY,<br>GEORGE J. BAGHDADY and GEORGE J.<br>BAGHDADY, JR., as Trustees of the Sylvia M.<br>Baghdady Qualified Personal Residence Trust,<br>SYLVIA M. BAGHDADY and GEORGE J.<br>BAGHDADY, JR., as Trustees of the George J.<br>Baghdady Qualified Personal Residence Trust,<br>And THE BAGHDADY FAMILY LIMITED<br>PARTNERSHIP,<br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS'
## MOTION TO DISMISS OR TO TRANSFER VENUE

### INTRODUCTION

This is an action seeking damages because of Defendants' breach of a garden center business partnership agreement, breach of fiduciary duties, and misrepresentations. The case is now before this Court on Defendants' motion that this Court lacks personal jurisdiction over them. Alternatively, Defendants move to transfer the case to the United States District Court of Connecticut. As demonstrated below, Defendants' motion should be denied. There are numerous contacts by Defendants to support personal jurisdiction over the Defendants, most particularly contacts arising out of the partnership claims brought by Plaintiff. Moreover, there is no basis to transfer venue from this Court.

{J:\CLIENTS\lit\023184\0101\00482097.DOC;1}

# FACTS[1]

In 1960, Plaintiff established with Defendant George J. Baghdady ("Defendant") a garden center business in Stratford, Connecticut under the name of Mary Carter Garden Center. They agreed to own the garden center business equally and that profits would be retained in the business to support its growth. In February of 1969, the Defendant and Plaintiff purchased real estate on Elm Street in Monroe, Connecticut (the "Elm Street Property") to grow nursery products for the garden center business. The Defendant recorded the Elm Street Property in his name for convenience, but agreed that Plaintiff and Defendant owned the property as partners.[2]

On December 30, 1970, Plaintiff and Defendant agreed to expand the garden center business partnership to include landscaping services and to establish other business locations. In doing so, Defendant and Plaintiff reconfirmed their partnership concerning the garden center business. In 1971, Plaintiff contributed approximately $13,500 for expansion of the garden center business. While Plaintiff contributed monies and advice to the partnership, Defendant helped in the operation of the garden center business partnership and received reasonable pay for his services.

In March of 1973, Plaintiff and Defendant acquired the Pond Spring Nurseries in Trumbull, Connecticut. This purchase included an operating nursery and land (the "Trumbull Property"). The Defendant recorded the Trumbull Property in his name for convenience, but

---

[1] The facts are taken from the affidavits of Sami J. Baghdady and Mary Cooper.

[2] Title to the Elm Street Property is currently held by two trusts controlled by Defendant and/or Defendant's wife and son. George J. Baghdady and George J. Baghdady, Jr. are the Trustees of the Sylvia M. Baghdady Qualified Personal Residence Trust, which holds a one-half (1/2) interest in the Elm Street Property, and Sylvia M. Baghdady and George J. Baghdady, Jr. are the Trustees of the George J. Baghdady Qualified Personal Residence Trust, which holds another one-half (1/2) interest in the Elm Street Property.

agreed with Plaintiff that it would be considered partnership property.[3] In the Spring of 1973, operations of the Mary Carter Garden Center were moved to the Trumbull Property to merge with Pond Spring Nurseries. Contrary to Defendants' misstatement of fact, the garden center business in Stratford is very much at issue in this case since it was merged with the Pond Spring Nurseries. Thus, these are the same businesses, and Defendant George continued his contacts with Massachusetts under the merged businesses. The retained earnings from previous years were used to help finance Pond Spring Nurseries. In 1978, Plaintiff contributed approximately $23,000 in capital to the garden center business for further expansion.

The administration of the garden center partnership business was conducted from Plaintiff's office in Massachusetts, with an additional office in Connecticut. Defendant supplied sales and inventory information to Plaintiff in Massachusetts. In fact, Defendant George Baghdady provided Mary Cooper, a book keeper for Plaintiff from 1963 through the present, hand written information in Massachusetts, so she could prepare tax returns, quarterly withholdings, and payroll information, for the garden center businesses operated by Plaintiff and Defendant. (See Exhibits attached to affidavit of Sami J. Baghdady.) Tax returns for the business were prepared and filed from the Massachusetts office.

Plaintiff and Defendant met, on a regular basis, in Massachusetts to discuss the garden center business and to make decisions relating to the business. Mary Cooper joined the Defendant and Plaintiff during some meetings in Massachusetts. Indeed, over the many years Mary Cooper worked for Plaintiff, she was present in Massachusetts and witnessed conversations between Plaintiff Sami and Defendant George wherein they discussed their garden

---

[3] Title to the Trumbull Property is currently held by the Baghdady Family Limited Partnership, for which George J. Baghdady is the Registered Agent.

center business venture. In fact, she witnessed Plaintiff and Defendant referring to each other as partners in the garden center business. From time to time, Defendant George telephoned Mary Cooper in Massachusetts to provide financial information concerning the garden center business. Even after the properties at issue in this case were put in the name of Defendant George Baghdady and his wife, Defendant George continued to provide to Mary Cooper, in Massachusetts, financial information so she could prepare his tax returns. She would prepare the tax returns in Massachusetts and then send them to him for filing.

Defendant George came many times to Massachusetts to purchase stock and inventory for the business, primarily from the Blue View Nursery, in Massachusetts. On at least one occasion, Mary Cooper accompanied Plaintiff Sami and Defendant George to Blue View Nursery in Massachusetts to purchase stock and inventory for the business.

Plaintiff and Defendant agreed that the garden center business partnership would continue unless or until either one or both parties decided to distribute the profits and liquidate the business, at which time the proceeds would be divided equally. Mary Cooper witnessed Defendant George and Plaintiff Sami many times speaking in Massachusetts about their garden center partnership business.

Defendant has denied Plaintiff's participation in the partnership and his right to one-half of the value of all of the garden center partnership assets, including real estate. Defendant has since refused to provide Plaintiff with updated accountings and has refused to terminate the partnership and equally divide the proceeds.

Plaintiff conferred clear financial benefits upon the Defendant in connection with the garden center business partnership, including but not limited to, the contribution of significant funds to the garden center business, significant contributions to acquire two pieces of property

(the Elm Street Property and the Trumbull Property), by providing Defendant with invaluable business advice, access to his credit lines, business and financial services, by providing Defendant with use of a primary business office in Massachusetts, and by providing assistance in performing business tasks such as the purchase of nursery stock in Massachusetts and the preparation of tax returns from the Massachusetts office. Defendant knowingly accepted and retained these financial benefits, then refused and failed to fulfill his obligation to share the garden center business partnership assets equally.

To induce Plaintiff to advance Defendant funds for the various purposes outlined herein, Defendant made repeated specific misrepresentations to Plaintiff while he was in Massachusetts of his intention to treat Plaintiff as an equal partner, of his intention to treat both the Elm Street and Trumbull Properties as partnership assets, and of his intention that the parties share equally in the garden center business. Plaintiff relied upon Defendant's misrepresentations which he made to Plaintiff in Massachusetts when Plaintiff contributed to the garden center business and to the purchase of both the Elm Street Property and the Trumbull Property.

## **ARGUMENT**

### I.    STANDARD FOR DETERMINING PERSONAL JURISDICTION.

While Plaintiff bears the burden of proving that the Court has personal jurisdiction over the Defendants, "[t]he most conventional of ... methods [in resolving this issue] is known as the 'prima facie' method." Daynard v. Ness, 290 F.3d 42, 50 (1st Cir. 2002). Under this method, this Court "consider[s] only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Daynard, 290 F.3d at 51, quoting, Foster–Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138,145 (1st Cir. 1995).

In determining whether a non-resident defendant is subject to personal jurisdiction, a federal court exercising diversity jurisdiction " is the functional equivalent of a state court sitting in the forum state." Daynard, 290 F.3d at 51. Thus, to establish personal jurisdiction, Plaintiff must show that the Massachusetts long-arm statute (G.L. c. 223A, § 3) grants jurisdiction and, if it does, that the exercise of jurisdiction under the statute is consistent with the constitution. Daynard, 290 F.3d at 52; Foster-Miller, 46 F.3d at 144. In the context of a partnership, which is alleged here, "the activities of the partner are generally attributed to the partnership and jurisdiction over the partnership follows from partnership qua entity and the forum." Daynard, 290 F.3d at 54, quoting, Donatelli v. National Hockey League, 893 F.2d 459, 466 (1st Cir. 1990).

II.    PLAINTIFF HAS DEMONSTRATED PERSONAL JURISDICTION OVER DEFENDANTS UNDER THE MASSACHUSETTS LONG ARM STATUTE AND THE DUE PROCESS CLAUSE.

A.    Plaintiff Has Established Jurisdiction Under the Long-Arm Statute.

Plaintiff has demonstrated a prima facie case of personal jurisdiction over Defendants under G.L. c. 223A,§3(a),(c) and (d) which provides:

> A Court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
> (a) transacting any business in this commonwealth;…
> (c) causing tortuous injury by an act or omission in this commonwealth;
> [or]
> (d) causing tortuous injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue…, in this Commonwealth….

There is no question that the instant case triggers jurisdiction under the long-arm statute. Jurisdiction exists under subsection (a) "transacting any business in the commonwealth." The phrase "transacting any business in this commonwealth" has been construed broadly. Daynard v. Ness. 184 F.Supp. 2d 55, 63 (D. Mass. 2001), aff'd, 290 F.3d 42. Indeed, the Supreme Judicial

Court has held that a single telephone call from a hotel to a Massachusetts resident was sufficient to meet the "transacting business" test. <u>Daynard</u>, 184 F.Supp. 2d at 63, <u>citing</u>, <u>Tatro v. Manor Care, Inc.</u>, 416 Mass. 763,768-69 (1994).

The instant case arises out of business transactions between Plaintiff and Defendant George, in particular their agreement to be partners in the garden center business which started in Stratford.  Contrary to Defendants' misstatement of fact, the garden center business in Stratford is very much at issue in this case since it was merged with the Pond Nurseries.  Thus, these are the same businesses, and Defendant George continued his contacts with Massachusetts under the merged businesses.  Defendant George met with Plaintiff many times in Massachusetts, sent financial information into Massachusetts concerning the business so that tax returns, quarterly withholdings and payroll could be prepared.  Defendant George came personally to Massachusetts on many occasions to purchase stock and inventory for the partnership's garden center business operations.

The evidence supports a finding that Plaintiff and Defendant George entered into a garden center business partnership, had meetings in Massachusetts about the garden center partnership business and that the partnership agreement was discussed and confirmed during meetings between the two in Massachusetts.  Defendant George utilized a Massachusetts office and utilized Plaintiff's book keeper in Massachusetts to perform many financial services.  He met Plaintiff on many occasions in Massachusetts to discuss the business operations which were put in the name of the other Defendants.

Finally, Defendant George has committed tortuous injuries to Plaintiff both inside the Commonwealth and outside the Commonwealth. Defendant made misrepresentations to Plaintiff in Massachusetts to induce him to contribute monies and services to the garden center business

partnership. Defendant George also breached his fiduciary duties to Plaintiff by denying the garden center business partnership and denying Plaintiff's right to the garden center business partnership assets. These actions satisfy subsection (c) committing a tort in the Commonwealth, and (d) causing a tortuous injury in the Commonwealth by actions outside the Commonwealth where, as here, Defendant George has engaged in a persistent course of conduct within the Commonwealth.

      B.     Plaintiff Has Demonstrated Personal Jurisdiction Under the Due Process Clause.

The Supreme Judicial Court has interpreted the state's long-arm statute "as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States." Automatic Sprinkler Corp. v. Seneca Foods Corp., 361 Mass. 441, 443 (1972). Where, as here, the state's long-arm statute is coextensive with the outer limits of due process, the court's attention properly turns to the constitutional standards. Daynard, 290 F.3d at 52.

"Due process requires only that in order to subject a defendant to a judgment in personam, if he not be present within the territory of the forum, he have certain minimum contacts with it such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 319 (1945). Indeed, to be subject to Massachusetts' jurisdiction, a defendant need only have one contact with the forum state, as long as that contact is meaningful. Nowak v. Tak How Invs. Ltd., 94 F.3d 708, 717 (1st Cir. 1996). "The cornerstones upon which the concept of purposeful availment rest are voluntariness and foreseeability." Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995).

There is little question that Defendants had minimum contacts with Massachusetts. Plaintiff and Defendant George entered into a partnership regarding the garden center business, and Defendant George had numerous contacts with Massachusetts concerning that parties'

business relationship. The above analysis and the statement of facts establish not only a minimum of contacts, but numerous contacts by Defendant George with Massachusetts arising out of the parties garden center business partnership. These contacts by Defendant George were purposeful and were entirely foreseeable so that he could fairly expect to be hailed into a Massachusetts Court arising out of Plaintiff's claims.

Moreover, the garden center businesses and properties held in trust by the remaining Defendants are alleged partnership assets over which this Court has jurisdiction because of the partnership contacts with Massachusetts. See Daynard, 290 F.3d at 54; Donatelli, 893 F.2d at 466.

In sum, Plaintiff has established a prima facie case that Due Process is satisfied. Defendant George had numerous purposeful and meaningful contacts with Massachusetts. There is nothing unfair or unforeseeable about personal jurisdiction over Defendants. Indeed, notions of fair play clearly favor this Court's exercising personal jurisdiction over Defendants.

III.    THERE IS NO BASIS TO TRANSFER VENUE OF THIS CASE.

A case may be transferred to another venue only if the party seeking a transfer demonstrates (1) good cause shown, and (2) when it is in the interest of justice or more convenient for the witnesses and parties. Baxter v. Conte, 190 F.2d 123, 130 (D. Mass. 2001). Defendants have failed to sustain their burden of establishing that this case should be transferred to the United States District Court for the District of Connecticut.

Plaintiffs have not shown any good cause. Plaintiff, and at least one other key witness, and many documents are located in Massachusetts. Connecticut and Massachusetts abut each other, and Defendants have numerous contacts with Massachusetts. Transferring the case to Connecticut will not make it any more convenient for anyone involved in the case. If anything,

the interests of justice favor that this matter remain in Massachusetts. Plaintiff filed this suit here because he has been wronged. There is no injustice in requiring Defendants to defend their wrong doing here in Massachusetts. Thus, this Court should deny Defendants' alternative request to transfer this case to the United States District Court for the District of Connecticut.

## CONCLUSION

For the reasons set forth above, Plaintiff requests that this Court deny Defendants' Motion to Dismiss for lack of personal jurisdiction or, alternatively, to transfer venue.

SAMI J. BAGHDADY,
By his attorneys,

Michael P. Angelini (BBO#019340)
Kimberly A. Stone (BBO#630952)
Bowditch & Dewey, LLP
311 Main Street
P.O. Box 15156
Worcester, MA 01615-0156
Tel: (508) 926-3435
Fax: (508) 929-3033

Dated: October 27, 2004

## CERTIFICATE OF SERVICE

I, Kimberly A. Stone, hereby certify that I have served a copy of the foregoing by mailing same postage prepaid this 27th day of October, 2004 to the following:

James A. Wade, Esquire
John W. Steinmetz, Esquire
Caryn L. Daum, Esquire
Robinson & Cole, LLP
One Boston Place
Boston, MA 02108

Kimberly A. Stone

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11683 NG

|  |  |  |
|---|---|---|
| SAMI J. BAGHDADY, | ) | Michael P. Angelini, Esq. |
|  | ) | BBO # 019340 |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| GEORGE J. BAGHDADY, | ) |  |
|  | ) |  |
| GEORGE J. BAGHDADY and | ) |  |
| GEORGE J. BAGHDADY, JR., | ) |  |
| asTrustees of the Sylvia M. Baghdady | ) |  |
| Qualified Personal Residence Trust, | ) |  |
| SYLVIA M. BAGHDADY and | ) |  |
| GEORGE J. BAGHDADY, JR., as | ) |  |
| Trustees of the George J. Baghdady | ) |  |
| Qualified Personal Residence Trust, | ) |  |
|  | ) |  |
| and | ) |  |
|  | ) |  |
| THE BAGHDADY FAMILY | ) |  |
| LIMITED PARTNERSHIP, | ) |  |
| Defendants. | ) |  |
|  | ) |  |

## AFFIDAVIT OF MARY COOPER

I, Mary Cooper, depose and state under oath as follows:

1. I reside at 382 Massachusetts Ave., Arlington, Ma.

2. I have acted as secretary and book keeper for Sami J. Baghdady from 1963 through the present.

3. Over the course of the many years, George J. Baghdady provided me hand written information in Massachusetts, where I worked, so I could prepare tax

returns for the garden center business operated by Sami and George, a paint store
and real estate located in Stratford, Connecticut. (See Exhibits attached to
affidavit of Sami J. Baghdady.)

4.  Over the course of many years, I was present at business meetings in Sami's
Massachusetts office at which both Sami and George were present and they
discussed the garden center business.

5.  From time to time, George would telephone me to Massachusetts to provide
financial information.

6.  Over the many years I worked for Sami J. Baghdady, I was present in
Massachusetts and witnessed conversations between Sami and George wherein
they discussed their garden center business venture and referred to each other as
partners in the garden center business.

7.  Even after the properties at issue in this case were put in the name of George
Baghdady and his wife, George continued to provide to me in Massachusetts
financial information so that I could prepare his tax returns. I would prepare the
tax returns in Massachusetts and then send them to him for filing.

8.  During the time period referenced in paragraph 7, George continued to call me
from time to time in Massachusetts to supply financial information.

9.  Also during the time period referenced in paragraph 7, George came to
Massachusetts and met with Sami in my presence on many occasions to discuss
issues relating to the financial operations of the garden center business.

10.  At all relevant times, I witnessed George and Sami many times speaking in Massachusetts in the context of their acting as partners in the garden center business.

11.  On at least one occasion, I went with Sami and George to Blue View Nursery in Massachusetts to purchase stock and inventory for the garden center business.

12.  I am also aware that George came to Massachusetts on other occasions to purchase stock and inventory for the garden center business.

Signed under the pains and penalties of perjury this ___25th___ day of October, 2004

Mary Cooper