UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SAMI J. BAGHDADY,
     Plaintiff,

     v.                              CIVIL ACTION NO.
                                      04-11683-NG
GEORGE J. BAGHDADY,
GEORGE J. BAGHDADY and
GEORGE J. BAGHDADY, JR., as
Trustees of the Sylvia M. Baghdady
Qualified Personal Residence Trust,
SYLVIA M. BAGHDADY and
GEORGE J. BAGHDADY, JR., as
Trustees of the George J. Baghdady
Qualified Personal Residence Trust,
and THE BAGHDADY FAMILY LIMITED
PARTNERSHIP,
     Defendants.

**REPORT AND RECOMMENDATION RE:
DEFENDANTS' MOTION TO DISMISS OR TO TRANSFER VENUE
IF ACTION IS NOT DISMISSED IN ITS ENTIRETY
(DOCKET ENTRY # 7)**

**April 20, 2005**

**BOWLER, U.S.M.J.**

Plaintiff Sami J. Baghdady ("plaintiff" or "Sami Baghdady"), a resident of Belmont, Massachusetts, initially filed this action in the Massachusetts Superior Court Department (Cambridge Division) against defendants George J. Baghdady ("George Baghdady"); George J. Baghdady and George J. Baghdady, Jr., as Trustees of the Sylvia M. Baghdady Qualified Personal Residence Trust; Sylvia M. Baghdady ("Sylvia Baghdady") and George J. Baghdady, Jr., as Trustees of the George J. Baghdady Qualified Personal Residence Trust; and the Baghdady Family Limited

Partnership (collectively:  "defendants").  Defendants removed
the action to the United States District Court for the District
of Massachusetts and presently seek to dismiss this action in its
entirety for lack of in personam jurisdiction over defendants or,
if not dismissed, transfer this action to the United States
District Court for the District of Connecticut ("the Connecticut
district court") on the basis of improper venue.  (Docket Entry #
7).  After conducting a hearing, this court took the motion
(Docket Entry # 7) under advisement.

For reasons articulated below, plaintiff makes a sufficient
prima facie showing of in personam jurisdiction but defendants
meet their burden of demonstrating improper venue thereby
warranting a transfer pursuant to 28 U.S.C. § 1404(a) to the
Connecticut district court.


I.  <u>IN PERSONAM JURISDICTION</u>

<u>                    STANDARD OF REVIEW</u>

In this circuit, when faced with a motion to dismiss for
lack of in personam jurisdiction, three competing standards of
review present themselves.  "The most conventional" and more
frequently employed standard is known as "the prima facie
method."  <u>Daynard v. Ness, Motley, Loadholt, Richardson & Poole</u>,
290 F.3d 42, 50 (1st Cir. 2002); <u>accord</u> <u>Foster-Miller, Inc. v.
Babcock & Wilcox Canada</u>, 46 F.3d 138, 145 (1st Cir. 1995).

The prima facie method or standard allows the court "'to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction.'" Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d at 145 (quoting Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992)). A plaintiff, however, may not rely on unsupported allegations in the complaint to make the required showing. Boit v. Gar-Tec Products, Inc., 967 F.2d at 675 ("plaintiffs may not rely on unsupported allegations in their pleadings to make a prima facie showing of personal jurisdiction"). Instead, the plaintiff must proffer "evidence of specific facts" with properly documented evidentiary proffers. Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d at 145. Such properly documented evidence includes the affidavits and deposition transcripts in the record before this court. See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, 290 F.3d at 45 (using the plaintiff's "version of the facts" drawn from inter alia "both sides subsequent affidavits" and a deposition).

Notwithstanding plaintiff's proffered affidavits and deposition transcripts, defendants urge this court to utilize the more stringent standard of review known as the preponderance of the evidence standard. (Docket Entry # 11). Defendants correctly reason (Docket Entry # 11, p. 4) that this standard applies when, given the "circumstances of a particular case[,] it

is unfair to force an out-of-state defendant to incur the expense
and burden of a trial on the merits in the local forum without
first requiring more of the plaintiff than a prima facie showing
of facts essential to in personam jurisdiction."  Foster-Miller,
Inc. v. Babcock & Wilcox Canada, 46 F.3d at 145-146.

For example, the standard applies if "the proffered evidence
is conflicting and the record is rife with contradictions, or
when a plaintiff's affidavits are 'patently incredible.'"
Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d at 146
(quoting Boit v. Gar-Tec Products, Inc., 967 F.2d at 146).
Defendants submit that Sami Baghdady's two affidavits, his own
and that of Mary Cooper ("Cooper"), are "'patently incredible'"
and the record is rife with contradictions.  (Docket Entry # 11).

Turning first to Sami Baghdady's affidavit, although
suspect, it is not patently incredible.  His statements that he
advanced money in 1971 to expand the garden center and that the
administration of the business was conducted from his office in
Massachusetts as well as an additional office in Connecticut,
albeit at undetermined times, are not patently incredible.  He
supports the former assertion with a July 30, 1971 letter
referencing his capitalization of the garden center and
deposition testimony evidencing the 1971 transfer of the paint
store as opposed to the building and/or nursery at the same
Connecticut location.  (Docket Entry # 16, Ex. A, pp. 14-15, 35-

37, 71-73 & 156; Docket Entry # 16, Ex. 2). He supports the
latter assertion by his maintenance of an office in Massachusetts
staffed by Mary Cooper, who has been his secretary since 1970
(Docket Entry # 16, Ex. A, p. 99), even though George Baghdady,
located in Connecticut, kept the books for the paint store
(Docket Entry # 16, Ex. A, p. 72). Tax returns prepared and
submitted in Massachusetts for the Mary Carter Paint Factory are
admittedly limited to the properly documented periods of 1969 and
1970, which predate the alleged merger of the garden center into
a Trumbull, Connecticut nursery in 1973.

Sami Baghdady's averment that in the spring of 1973 the
operations of the garden center were moved to Trumbull and merged
with Pond Spring Nurseries in Trumbull also fails to give rise to
the need for an evidentiary hearing and the use of the
preponderance of the evidence standard. The evidence in the
record, although far from compelling, nonetheless supports a
finding that Sami Baghdady transferred the paint store as opposed
to the nursery or garden center in 1971.[1] Thereafter, the store

---

[1] It is true that the affidavit of James Shevlin, wherein
he asseverates that he purchased the paint and garden center in
1973 and that it was one business at the time of the purchase
(Docket Entry # 8, Ex. F), differs from Sami Baghdady's
deposition testimony and letter distinguishing the paint store
from the garden center business. The affidavit, however, does
not render the latter evidence farfetched, conclusory,
unsupported or patently incredible. See generally Foster-Miller,
Inc. v. Babcock & Wilcox Canada, 46 F.3d at 146; Massachusetts
School of Law at Andover v. American Bar Association, 142 F.3d
26, 34 (1st Cir. 1998) (noting that court is not required "to

5

transferred ownership twice in 1973 and, as of November 1973,
operated under the registered trade name "Mary Carter Paint and
Garden Center."  (Docket Entry # 8, Ex. A, ¶ 31; Docket Entry #
8, Ex. F; Docket Entry # 11, Ex. 3).  James Shevlin's operation
of a garden center at the former location does not render the
record "rife with contradictions."  The sale of the paint store
did not necessarily foreclose the discontinuation of the
partnership's garden center business at one location and the
transfer of partnership funds and capital into the new location
in Trumbull in 1973.  Indeed, Sami Baghdady avers that his
retained earnings were used to fund the new business.[2]

    Turning next to Mary Cooper's affidavit, it is not patently
incredible.  It is true that she fails to pinpoint specific dates
when she was present "over the many years" she worked for Sami
Baghdady during which she witnessed the conversations between
Sami and George Baghdady "wherein they discussed their garden
center business venture and referred to themselves as partners in
the garden center business."  (Docket Entry # 10, Affidavit of
Mary Cooper, ¶ 6).  On the other hand, she states that, "[A]fter
the properties at issue in this case were put in the name of

_____

'credit conclusory allegations or draw farfetched inferences'").

    [2]  These and all other findings are made solely for purposes
of the jurisdictional issue.  They do not comprise the law of
this case.

George Baghdady and his wife,"[3] George Baghdady came to Massachusetts and discussed "issues relating to the financial operations of the garden center business" with Sami Baghdady. (Docket Entry # 10, Affidavit of Mary Cooper, ¶¶ 7 & 9). Her averment that George Baghdady would telephone her "to provide financial information" is likewise not incredible.

Finally, given the circumstances of this case and the impending transfer to Connecticut, requiring a greater showing from plaintiff does not serve the underlying purpose for employing the preponderance of the evidence standard. That purpose, which is to avoid the unfairness of subjecting an out of state defendant to the burden and expense of a trial on the merits in the local forum, Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d at 146, is not implicated given the transfer to the Connecticut forum. Conducting a full blown evidentiary hearing also unnecessarily "squander[s] judicial resources." Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d at 146 (noting that "pretrial evidentiary hearings are relatively cumbersome creatures, and, if used routinely, can squander judicial resources").

Accordingly, this court will employ the prima facie method. Taking the specific facts affirmatively alleged by plaintiff as

---

[3] George Baghdady and his wife purchased the Trumbull, Connecticut property in 1973. (Docket Entry # 8, Ex. A, ¶ 36).

true, this court adds to the mix the uncontroverted facts put forth by defendants.  See Massachusetts School of Law at Andover v. American Bar Association, 142 F.3d at 34.  Without crediting conclusory allegations or drawing farfetched inferences but construing disputed facts "in the light most congenial to plaintiff's jurisdictional claim," Massachusetts School of Law at Andover v. American Bar Association, 142 F.3d at 34, Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994), the facts are as follows.

<u>FACTUAL BACKGROUND</u>

Sami Baghdady, the younger brother of George, resides in Belmont, Massachusetts.  George Baghdady resides with his wife at 104 Elm Street in Monroe, Connecticut (the "Elm Street property").  Although George Baghdady and his wife, Sylvia, use the property as their primary residence, they purchased the property with Sami Baghdady to grow nursery products for the Mary Carter Garden Center.

George and Sami Baghdady began the Mary Carter Garden Center in 1960 in Stratford, Connecticut.  At that time, they agreed to own the business equally and retain any profits in the business to support its growth.  The location of where the parties formed the original partnership agreement is unclear.

For convenience, George Baghdady recorded title to the Elm

Street property in his and his wife's names although George and Sami Baghdady agreed to own the property as partners.  George Baghdady paid the costs and expenses associated with the property and negotiated the purchase price.

As part of George and Sylvia Baghdady's estate planning, they each transferred their one half interests in the Elm Street property into qualified personal residence trusts.  At present, defendant the George J. Baghdady Qualified Personal Residence ("George Baghdady Residence Trust") owns a one half interest and defendant the Sylvia M. Baghdady Qualified Personal Residence Trust ("Sylvia Baghdady Residence Trust") owns the other one half interest in the property.  George Baghdady and his son, George Baghdady, Jr. ("George Jr."), are the trustees of the Sylvia Baghdady Residence Trust whereas Sylvia Baghdady and George Jr. are the trustees of the George Baghdady Residence Trust.  Both trusts were organized under the laws of Connecticut.  With the knowledge of Sami Baghdady but not his participation, George Baghdady has given an estimated ten mortgages on the Elm Street property.

Attorney Raymond W. Ganim ("Attorney Ganim"), an 82 year old Connecticut attorney and the cousin of George and Sami Baghdady, represented George and Sylvia Baghdady in their purchase of the Elm Street property in 1969.  Indeed, he has represented both brothers in various matters since 1957 and the mortgaging of the

property on at least five occasions.

The Mary Carter Garden Center, located on Barnum Avenue in Stratford, consists of both the paint store and the nursery or garden center.  A building on the property also produces rental income.

Sami Baghdady acquired a Connecticut franchise for operating and owning paint stores as Mary Carter Paint stores.  He began operations with a main store in Stratford in 1959 or 1960.  Under the terms of the franchise, Sami Baghdady owned the stores in Connecticut and paid the bills.  By 1971, Sami Baghdady had opened another four Mary Carter Paint stores, all located in Connecticut.

In 1959, George Baghdady began working at the Stratford store as a nursery salesman.  George Baghdady, who received a salary, and his wife, Sylvia, ran the store.  They also lived at the property during the two year period from 1960 to the end of 1962 while Sami Baghdady was in Lebanon.  The 1969 and 1970 federal tax returns for the paint store were prepared and submitted in Massachusetts using information supplied by George Baghdady from Connecticut.

In 1971, George Baghdady traveled to Massachusetts and met with Sami Baghdady.  The two discussed George Baghdady purchasing the Mary Carter Paint store that was located in Stratford, also known as the Mary Carter Paint Factory, and receiving $5,000 as a

partial payment for George Baghdady transferring the 800 shares he owned of a building located in Zahleh, Lebanon ("Zahleh property") to Sami Baghdady.  Sami Baghdady already owned another 800 shares in the Zahleh property.[4]  Sami and George Baghdady agreed to the transaction and George returned to Connecticut with the understanding that he would determine a price for the remaining value of his 800 shares.  Consequently, in 1971, Sami Baghdady transferred his entire interest, consisting of the stock and the business, in the Mary Carter Paint store located in Stratford to George Baghdady.  Construing the record as required in Sami Baghdady's favor[5] and as indicated previously, George Baghdady transferred the paint store first to his wife's cousin, Andrew Zartolas, Sr., in 1973, who then transferred the Stratford store to James Shevlin, a Connecticut resident.

The building and/or garden center were not transferred at that time.  Instead, George and Sami Baghdady agreed that Sami Baghdady's retained earnings prior to the 1971 transfer of the paint store would be applied as capitalization in the garden center business.  In 1971, Sami Baghdady advanced an estimated

---

[4]  The building, which houses a number of apartments, consisted of 2,400 shares of property.  Sami Baghdady's father purchased the Zahleh property in 1958 and, when he died shortly after the purchase, the property initially went to his heirs, Sami Baghdady's mother and five children.

[5]  Massachusetts School of Law at Andover v. American Bar Association, 142 F.3d at 34.

$13,500 earmarked for the expansion of the garden center. George Baghdady drew a salary for his work operating the garden center. Administration of the garden center located in Stratford was conducted partly in Sami Baghdady's Massachusetts office and partly in a Connecticut office.

In return for part or all of the remaining shares in the Zahleh property, Sami Baghdady transferred an amount of cash and his interest in the building located at the Stratford property to George Baghdady in two parts, the first in 1973 or 1974 and the second in 1978. Attorney Ganim was involved in these transactions and was supposed to be preparing a quitclaim deed, according to Sami Baghdady. Although the transfer of the Zahleh property is not the subject of this lawsuit, George Baghdady traveled to Massachusetts to discuss the transaction with Sami Baghdady in 1971, the transaction took place in Belmont and the agreement was made in Massachusetts, according to Sami Baghdady.

In 1973, using funds supplied from Sami Baghdady's retained earnings in the partnership as well as funds contributed by George and Sylvia Baghdady, the partnership acquired a second property, also located in Connecticut. The property, located in Trumbull, Connecticut ("the Trumbull property"), consisted of an operating nursery known as the Pond Spring Nursery[6] and land, both situated on Main Street. For convenience, George Baghdady

---

[6] The name changed to Pond Spring Nurseries in the 1980s.

recorded the Trumbull property in his name or in the name of himself and his wife.  By the spring of 1973, the garden center business was being operated at the Trumbull property as opposed to the Stratford property.  James Shevlin was operating a garden and paint store in Stratford.

Sami Baghdady contributed another $23,000 in capital to the garden center business in 1978.  At an undetermined time, George Baghdady traveled to Massachusetts and together with Sami Baghdady and Mary Cooper went to Blue View Nursery in Massachusetts to purchase stock and inventory for the garden center business.  Mary Cooper resides in Massachusetts and acts as a secretary and bookkeeper for Sami Baghdady.[7]  She still worked for Sami Baghdady as of the date of his September 1999 deposition.[8]  She avers that George traveled to Massachusetts and met with Sami Baghdady in her presence on many occasions to discuss garden center business.

At the initiation of Massachusetts sales representatives from Massachusetts nurseries who visited Pond Spring Nurseries, the nursery purchased supplies from these Massachusetts companies

---

[7]  Her compensation includes residing in one of Sami Baghdady's Massachusetts apartments without paying rent.

[8]  Given the October 2004 date of her affidavit, this court draws the reasonable inference that she remains in Sami Baghdady's employ.  She will likely testify as a witness at the trial inasmuch as she avers that she witnessed numerous conversations between Sami and George Baghdady acting as partners in the garden center business.

in limited amounts in 1998, 1999, 2001, 2002, 2003 and 2004.

Such purchases from Massachusetts amounted to between .2% to 1.1%

of Pond Spring Nurseries' total business purchases during each of

these years.  Neither Pond Spring Nurseries nor the Mary Carter

Garden Center advertised in Massachusetts.

In 1991, George and Sylvia Baghdady transferred legal title

to the Trumbull property to defendant the Baghdady Family Limited

Partnership ("Baghdady Family Limited Partnership" or "the

partnership"), an entity organized under the laws of Connecticut.

Donald S. Weiner ("Weiner"), a licensed certified public

accountant who practices in Connecticut, assisted in preparing

the tax returns for the partnership as well as the personal

income tax returns of George and Sylvia Baghdady.  He has served

as George and Sylvia Baghdady's accountant since 1973 and the

partnership's accountant since 1991.[9]

George and Sylvia Baghdady are general partners in the

Baghdady Family Limited Partnership.  The limited partners of

this partnership are:  George Jr. and Marshal D. Gibson, both

Connecticut residents, as trustees of the George J. Baghdady, Jr.

1991 Trust; the David Baghdady 1991 Trust; the Raymond Baghdady

---

[9]  His testimony will likely be necessary at trial inasmuch
as he prepared the relevant tax returns for the Pond Spring
Nurseries and served as George and Sylvia's accountant for the
past 31 years.  He avers that at no time has Sami Baghdady
contacted him for any information related to the Pond Spring
Nurseries, the Elm Street property or the Trumbull property.

1991 Trust; and the Lucille G. Baghdady 1991 Trust.

Neither the Baghdady Family Limited Partnership nor the George Baghdady Residence Trust and the Sylvia Baghdady Residence Trust ("the trust defendants") conduct, advertise or solicit business, hold an interest in property or maintain any business accounts in Massachusetts. George, Sylvia and their son, George Jr., all residents of Connecticut, operate Pond Spring Nurseries with the assistance of two seasonal employees.

## DISCUSSION

"The plaintiff bears the burden of proving the court's personal jurisdiction over the defendant." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, 290 F.3d at 50. A court may obtain in personam jurisdiction over a defendant by way of the "two different avenues" of general or specific jurisdiction. Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d at 144. "'General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state.'" Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d at 144.

Plaintiff appears to rely exclusively upon specific jurisdiction as a means to hail defendants into a Massachusetts court. Moreover, the facts fail to suggest the continuous and

systemic activity unrelated to the present suit that would give rise to general jurisdiction.  Neither George Baghdady nor the trust and partnership defendants maintain a business in Massachusetts, own or possess real property in Massachusetts, solicit or advertise for business in Massachusetts or maintain business or bank accounts in Massachusetts.  Similar to the contacts deemed insufficient in Helicopteros Nacioanles de Columbia, S.A. v. Hall, 466 U.S. 408, 416-417 (1984), the meetings that took place in Belmont regarding the unrelated sale of shares in the Zahleh property are not enough to create the continuous and systemic contacts necessary for the exercise of general jurisdiction over George Baghdady.

Plaintiff, however, fairs substantially better under the specific jurisdiction avenue.  Where, as here, jurisdiction is based upon diversity, a federal court determining whether a non-resident defendant is subject to its jurisdiction, "'is the functional equivalent of a state court sitting in the forum state.'"  Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995).  Sufficient contacts must therefore exist to satisfy both the Massachusetts longarm statute, Massachusetts General Laws chapter 223A ("chapter 223A"), and the Due Process Clause. Sawtelle v. Farrell, 70 F.3d at 1387.

Although plaintiff cites to sections (a), (c) and (d) of chapter 223A, he discusses at length only section (a).  Since

16

section 3(a) undoubtedly applies and is as expansive as the
boundaries of the Due Process Clause in its reach, this court
turns directly to the constitutional inquiry.  See Daynard v.
Ness, Motley, Loadholt, Richardson & Poole, 290 F.3d at 52
(sidestepping statutory inquiry and proceeding directly to the
constitutional analysis "because the Supreme Judicial Court of
Massachusetts has interpreted the state's long-arm statute 'as an
assertion of jurisdiction over the person to the limits allowed
by the Constitution of the United States'"); Foster-Miller, Inc.
v. Babcock & Wilcox Canada, 46 F.3d at 144-145 (not addressing
reach of section 3(a) and turning directly to constitutional
inquiry); see also Sawtelle v. Farrell, 70 F.3d at 1387 ("when a
state's long-arm statute is coextensive with the outer limits of
due process, the court's attention properly turns to the issue of
whether the exercise of personal jurisdiction comports with
federal constitutional standards").  That said, section 3(a)
applies to business disputes.  Accordingly, this court will
address the reach of the sections of chapter 223A that apply to
the tort claims when addressing those claims.

The constitutional inquiry under the Due Process Clause
includes three separate components:  relatedness, purposeful
availment and reasonableness.[10]  Foster-Miller, Inc. v. Babcock &

_____

[10]  Section 3(a) requires the defendants' acts to satisfy
the "arising from" and "transacting any business" language of the
statute.  The latter requirement equates to the relatedness

Wilcox Canada, 46 F.3d at 144.  Distinguishing and discussing separately the contract and tort causes of action, see Phillips Exeter Academy v. Howard Phillips Fund, 196 F.3d 284, 289 (1st Cir. 1999) (commending lower court's decision to separately analyze contract and tort claims), this court turns to these three components.

A.  Relatedness

As its names implies, relatedness mandates that the claim "must directly arise out of the specific contacts between the defendant and the forum state."  Sawtelle v. Farrell, 70 F.3d at 1389; accord Ticketmaster-New York v. Alioto, 26 F.3d at 206 ("requirement focuses on the nexus between the defendant's contacts and the plaintiff's cause of action").  In other words, George Baghdady's contacts with the Massachusetts forum must give rise or relate to the cause of action for breach of the partnership agreement.  See United Electrical Workers v. 163 Pleasant Street Corporation, 960 F.2d 1080, 1089 (1st Cir. 1992) (noting that "only Lindsay's involvement in negotiation of the collective bargaining agreement can be thought to give rise, or relate, to this cause of action" for breach of contract).  Merely purchasing goods from a Massachusetts business or contracting with a Massachusetts resident will not, without more,

---

requirement and the former requirement equates to the "transacting any business" requirement.  Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d at 144 n. 3.

subject an out of state defendant to suit in Massachusetts. See
Phillips Exeter Academy v. Howard Phillips Fund, 196 F.3d at 289
("the mere existence of a contractual relationship between an
out-of-state defendant and an in-state plaintiff does not
suffice, in and of itself, to establish jurisdiction in the
plaintiff's home state"); Good Hope Industries, Inc. v. Ryder
Scott Company, 389 N.E.2d 76, 81 & n. 15 (Mass. 1979) (discussing
Nichols Associates v. Starr, 341 N.E.2d 909 (Mass.App.Ct.
1976)).

In contract cases, "the stereotypical inquiry" with respect
to relatedness asks "whether the defendant's forum-based
activities are 'instrumental in the formation of the contract,'"
Massachusetts School of Law at Andover v. American Bar
Association, 142 F.3d at 35, and its breach. See, e.g., Hahn v.
Vermont School of Law, 698 F.2d 48, 51 (1st Cir. 1983). That
said, the relatedness test is flexible and does not necessarily
turn upon technicalities such as the intricacies of contract
formation and the locale of the formal signing of a particular
contract.[11]  Sawtelle v. Farrell, 70 F.3d at 1389 ("relatedness
test is a 'flexible, relaxed standard'"); Hahn v. Vermont Law
School, 698 F.2d at 51 (paraphrasing Vencedor Manufacturing Co.

---

[11] It is nonetheless true, however, that "'physically
signing a contract by all the parties in Massachusetts is, in
literal terms, transacting business in Massachusetts'" under
section 3(a) of chapter 223A. Hahn v. Vermont Law School, 698
F.2d at 50.

19

v. Gougler Industries, Inc., 557 F.2d 886, 890 (1ˢᵗ Cir. 1977)).
In determining personal jurisdiction, contract cases necessitate
examining "the elements of the cause of action and ask whether
the defendant's contacts with the forum were instrumental either
in the formation of the contract or in its breach." Phillips
Exeter Academy v. Howard Phillips Fund, 196 F.3d at 289.

    In the case at bar, there is little information relative to
the formation of the partnership agreement in 1960.  After the
parties agreed to form the partnership and initially located the
center in Stratford, George Baghdady sent financial information
regarding the center to Sami Baghdady's Massachusetts office on
several occasions in 1969 and 1970.  Tax returns for these years
were prepared in Massachusetts.  Although not devoid of
significance, these contacts involve the performance of the
agreement and do not directly implicate the formation or the
breach of the agreement.

    A significant aspect of the breach, however, is whether the
partners agreed to merge or transfer the funds from the Stratford
property's garden center operations into the Trumbull property
and its garden center operations.  The terms of the partnership
agreement, i.e., whether it continued after the sale of the paint
store and/or the acquisition of the Trumbull property and whether
it was modified or extended to include the Trumbull property, are
central to the breach of contract claim.  George Baghdady

continued to send financial information relative to the Stratford property, albeit the building, after the sale of the paint store. More importantly, after the acquisition of the Trumbull property, George Baghdady traveled to Massachusetts, met with Sami Baghdady and discussed the garden center operations, according to both Cooper's and Sami Baghdady's affidavits.  Such Massachusetts contacts on the part of George Baghdady evidence a continuation of the partnership after the Trumbull property's acquisition and are significant in ascertaining the continuation and the scope of the agreement and, hence, its breach.  See Hahn v. Vermont Law School, 698 F.2d at 51 ("[a]ny determination of whether VLS has breached the contract will depend upon the terms of the contract, and such terms may include statements contained in the application information and acceptance letter VLS mailed to Hahn" in Massachusetts); see also Phillips Exeter Academy v. Howard Phillips Fund, 196 F.3d at 289 (quoting United Electrical Workers v. 163 Pleasant Street Corporation, 960 F.2d at 1089, that, "'the defendant's in-state conduct must form an "important, or [at least] material, element of proof" in the plaintiff's case'").  In other words, such contacts are neither fortuitous nor attenuated but, rather, form an important part of the proof and the breach of the partnership agreement.[12]

---

[12]  Coincidentally, although the relatedness inquiry is separate from the purposeful availment inquiry, these contacts also serve as a foundation for establishing purposeful availment.

21

In a tort claim, there is an analogy between the relatedness inquiry and the causation inquiry.  See Ticketmaster-New York v. Alioto, 26 F.3d at 207 (relatedness requirement "ensures that the element of causation remains in the forefront of the due process investigation").  The elements of a tort cause of action differ from a contract cause of action and, accordingly, the relatedness inquiry involves "prob[ing] the causal nexus between the defendant's contacts and the plaintiff's cause of action."  Phillips Exeter Academy v. Howard Phillips Fund, 196 F.3d at 289.  More specifically, the relatedness inquiry in a tort claim focuses upon whether "the plaintiff has established 'cause in fact' (i.e., the injury would not have occurred 'but for' the defendants' forum-state activity) and 'legal cause' (i.e., the defendant's in-state conduct gave birth to the cause of action)."  Levin v. Harned, 304 F.Supp.2d 136, 147 (D.Mass. 2003) (paraphrasing Massachusetts School of Law at Andover v. American Bar Association, 142 F.3d at 35); see United Electrical Workers v. 163 Pleasant Street Corporation, 960 F.2d at 1089 (noting binary causation concept of both "'but for'" and "legal cause" as included in the relatedness inquiry).  Strict adherence to a proximate cause standard as necessary to establish relatedness for a tort claim is not always mandatory where the tort arises in the context of a business association.  Nowak v.

---

22

Tak How Investments, Limited, 94 F.3d 708, 715 (1st Cir. 1996).

Plaintiff's tort claims consist of breach of fiduciary duty and misrepresentation. The former fails the relatedness test. Although plaintiff complains about George Baghdady's breach of fiduciary duties "by denying garden center business partnership and denying Plaintiff's right to garden center business partnership assets" (Docket Entry # 10, p. 8), any such breach of the fiduciary duty of loyalty occurred in Connecticut where the garden center was located. Denying payment to Sami Baghdady in Massachusetts of so-called partnership funds is "merely an in-forum effect of an extra-forum breach and, therefore inadequate to support a finding of relatedness." Phillips Exeter Academy v. Howard Phillips Fund, 196 F.3d at 291 (affirming rejection of breach of fiduciary tort claim as not satisfying relatedness test).

The misrepresentation claim, however, contains different elements. Sami Baghdady avers that George Baghdady made misrepresentations to him while Sami Baghdady was in Massachusetts. The misrepresentations concerned George Baghdady's intentions to treat the Elm Street and Trumbull properties as partnership assets, to repay Sami Baghdady the contributed funds and to share the profits of the garden center equally with Sami Baghdady. In order to induce Sami Baghdady to advance funds, George Baghdady made such misrepresentations to

Sami Baghdady while he was located in Massachusetts.  Sami Baghdady advanced $13,500 in 1971 and $23,000 in 1978 to expand the garden center and, in so doing, relied upon the foregoing misrepresentations in Massachusetts.  (Docket Entry # 10, Ex. 1, ¶¶ 8, 17, 20, 22 & 23).

These averments are not patently incredible or contradictory.  Furthermore, they are sufficiently strong to satisfy the relatedness aspect of the constitutional inquiry.  See, e.g., Levin v. Harned, 304 F.Supp.2d at 150 (noting that the defendant knew the plaintiff would rely on the representation and suffer financial injury in Massachusetts).

Likewise, the contacts are sufficient to satisfy the relevant section of the Massachusetts longarm statute both as to the "arising from" requirement and the "tortious injury . . . in this commonwealth" requirement.[13]  As set forth under the prima facie method, George Baghdady made the misrepresentations which then caused the tortious injury to Sami Baghdady in Massachusetts.  See Ealing Corporation v. Harrods, Limited, 790 F.2d 978, 982 (1st Cir. 1986); Whittaker Corporation v. United Aircraft Corporation, 482 F.2d 1079, 1084 (1st Cir. 1973) (misrepresentation made in Massachusetts by the defendant's

---

[13]  The most relevant provision of the state statute allows a court to exercise personal jurisdiction over an out of state defendant "as to a cause of action in law or equity arising from the person's . . . (c) causing tortious injury by an act or omission in this commonwealth."  Mass. Gen. L. ch. 223A, § 3(c).

employee falls within reach of section 3(c)); Burtner v. Burnham,
430 N.E.2d 1233, 1236-1237 (Mass.App.Ct. 1982)
(misrepresentations by mail and telephone to the plaintiff in
Massachusetts sufficient under section 3(c)); see generally
Ticketmaster-New York v. Alioto, 26 F.3d at 205 (discussing
section 3(c)).

B.  Purposeful Availment

     The constitutional requirement of purposeful availment
implicates the concepts of voluntariness and foreseeability.
Daynard v. Ness, Motley, Loadholt, Richardson & Poole, 290 F.3d
at 61 ("cornerstones" of purposeful availment are "voluntariness
and foreseeability"); Nowak v. Tak How Investments, Limited, 94
F.3d at 716 ("[o]ur two focal points are voluntariness and
foreseeability").  It requires that the defendant purposefully
avail himself "of the privilege of conducting activities in the
forum state, thereby invoking the benefits and protections of
that state's laws and making the defendant's involuntary presence
before the state's courts foreseeable."  Foster-Miller, Inc. v.
Babcock & Wilcox Canada, 46 F.3d at 144; see also Lawson v.
Affirmative Equities Corporation, 341 F.Supp.2d 51, 59 (D.Mass.
2004) (noting that the proper focus is upon "the nature of the
contact with the forum" and that a court should "avoid playing a
'numbers game'" inasmuch as "a single, meaningful contact with
the forum, even by means of a virtual presence, 'can fill the

bill'").

With respect to the contract claim, George Baghdady's trips to Massachusetts, as shown when employing the prima facie method, and his ongoing relationship with Sami Baghdady in Massachusetts evidence purposeful activity directed at the forum. See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, 290 F.3d at 62 (noting as purposeful activity "the ongoing relationship between the Motley defendants and Daynard--properly attributed to the Scruggs defendants").  George Baghdady's transmission of financial information and telephone calls to Sami Baghdady's Massachusetts office also weigh in favor of finding purposeful availment vis-à-vis the contract claim.  See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, 290 F.3d at 61 n. 11 (telephone and fax communications with the plaintiff in Massachusetts evidence jurisdictional contact).  Finally, he also traveled to Massachusetts, met with Sami Baghdady and on one occasion purchased garden supplies for the business, as set forth under the prima facie method.  Given these voluntary contacts directed at the Massachusetts forum as well as in the Massachusetts forum, it was foreseeable that George Baghdady would be subject to a breach of contact suit in a Massachusetts court.

As to the misrepresentation claim, where, as here, "a defendant knowingly sends into a state a false statement,

26

intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state." <u>Ealing Corporation v. Harrods, Limited</u>, 790 F.2d at 982 (further noting that the out of state defendant thereby "'purposefully avail[s] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws'").

In sum, plaintiff makes a sufficient showing on the first two prongs of the constitutional inquiry (relatedness and purposeful availment). The showing is neither particularly strong nor weak. On a sliding scale, the absence of an especially weak showing places plaintiff in a somewhat positive position from which to assess the reasonableness and fundamental fairness of exercising personal jurisdiction over George Baghdady. <u>See</u> <u>generally</u> <u>Ticketmaster-New York v. Alioto</u>, 26 F.3d at 210 ("reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction").

C.  <u>Reasonableness</u>

In assessing reasonableness and fundamental fairness, a court customarily examines the so-called "gestalt factors." These factors include:

> (1) the defendant's burden of appearing, (2) the forum
> state's interest in adjudicating the dispute, (3) the
> plaintiff's interest in obtaining convenient and effective
> relief, (4) the judicial system's interest in obtaining the
> most effective resolution of the controversy, and (5) the
> common interests of all sovereigns in promoting substantive
> social policies.

Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d at 150.

Massachusetts is not a great or appreciable distance from

Connecticut.  See Ticketmaster-New York v. Alioto, 26 F.3d at 210

("most of the cases that have been dismissed on grounds of

unreasonableness are cases in which the defendant's center of

gravity, be it place of residence or place of business, was

located at an appreciable distance from the forum").  That said,

George Baghdady is eight to ten years older than his brother Sami

Baghdady (Docket Entry # 16, Ex. A, p. 74) and, as convincingly

argued by defendants at the hearing and supported by affidavit,

litigating this action in Massachusetts poses a hardship.

As to the second factor, "Massachusetts has a significant

interest in obtaining jurisdiction over non-resident defendants

whose conduct causes injury to its citizens."  Lawson v.

Affirmative Equities Corporation, 341 F.Supp.2d at 61.  On the

other hand, this suit more closely resembles a business dispute

rather than a tort suit to recover damages for physical injuries.

As such, the Commonwealth's interest is not as great as it would

be with respect to a suit involving a misapplication of safety

standards and/or the infliction of physical injuries upon a forum

28

resident.  See Ticketmaster-New York v. Alioto, 26 F.3d at 211
(comparing Asahi Industry Company, Limited v. Superior Court of
California, 480 U.S. 102, 114-115 (1987)).  Massachusetts'
adjudicatory interest regarding the breach of contract dispute,
as opposed to the misrepresentation claim, does not weigh in
favor of exercising personal jurisdiction over George Baghdady
given the application of Connecticut law to the contract claim.
Cf. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, 290
F.3d at 62 (noting that "Massachusetts's adjudicatory interest is
likely to weigh in favor of exercising personal jurisdiction
because . . . Massachusetts law governs the dispute over the oral
fee-splitting arrangement").

Although plaintiff's choice of a Massachusetts forum
deserves "a degree of deference," the majority of the witnesses
reside in Connecticut.  Ticketmaster-New York v. Alioto, 26 F.3d
at 211.  Plaintiff's actual convenience appears weighted towards
a Connecticut forum.  Finally, the administration of justice
appears neutral and the parties fail to identify any particular
social policy favoring the Massachusetts forum.

In sum and on balance, the exercise of personal jurisdiction
over George Baghdady is reasonable, albeit not to a large degree,
and fundamentally fair.

D.  Remaining Defendants

Although this court has personal jurisdiction over George

29

Baghdady, the suit also names as defendants, albeit only in the caption as opposed to the body of the complaint, George Baghdady and George J. Baghdady, Jr., as Trustees of the Sylvia Baghdady Residence Trust; Sylvia Baghdady and George J. Baghdady, Jr., as Trustees of the George Baghdady Residence Trust; and the Baghdady Family Limited Partnership.  None of these entities or trustees own Massachusetts property, possess bank or business accounts, solicit business, advertise or otherwise conduct any business in Massachusetts.  Only George Baghdady, who is named as a Trustee of the Sylvia Baghdady Residence Trust, which, in turn, owns a one half interest in the Elm Street property, has any connection to Massachusetts.  George Baghdady is also a general partner of the Baghdady Family Limited Partnership.

"In the partnership context, 'the activities of the partner are generally attributed to the partnership and jurisdiction over the partnership follows from the partner's contacts, if sufficient, regardless of the absence of independent contacts between the partnership qua entity and the forum.'"[14]  Daynard v. Ness, Motley, Loadholt, Richardson & Poole, 290 F.3d at 54 (quoting Donatelli v. National Hockey League, 893 F.2d 459, 466 (1st Cir. 1990)).  As explained by the First Circuit in

---

[14]  The "substantial influence test" therefore does not apply to partnerships although it does apply to unincorporated associations.  See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, 290 F.3d at 54.

<u>Donatelli</u>, "the actions of a partner within the scope of a
general partnership's purposes necessarily become the actions of
the partnership.  To attribute the partner's scope-of-business
contacts to the partnership, therefore, is not only permissible,
but mandated."  <u>Donatelli v. National Hockey League</u>, 893 F.2d at
466; <u>accord</u> <u>Tuttle v. Lorillard Tobacco Company</u>, 118 F.Supp.2d
954, 960 (D.Minn. 2000) ("a partnership may be subject to
jurisdiction on the basis of its partner's contacts with the
forum"); <u>Miller v. McMann</u>, 89 F.Supp.2d 564, 568 (D.N.J. 2000);
<u>see also</u> <u>Maker v. Birmingham</u>, 592 N.E.2d 1339, 1341 (Mass.App.Ct.
1992) (noting that in Massachusetts, as well as in Vermont,
partners act as agents of partnership for the purpose of
partnership business).  Plaintiff therefore makes a prima facie
showing of personal jurisdiction over the partnership.

With respect to the trust defendants, however, plaintiff
fails in his burden of establishing jurisdiction.  "'The
administration of a trust of land is governed by the law of the
state where the land is and can be supervised by the courts of
that state only.'"[15]  <u>Beardsley v. Hall</u>, 197 N.E. 35, 39 (Mass.
1935); <u>see</u>, <u>e.g.</u>, <u>Hutchins v. Commissioner of Corporations and
Taxation</u>, 172 N.E. 605, 608 (Mass. 1930) (resident trusts "cannot
be enforced by courts of this Commonwealth even though all the

---

[15]  The trusts own legal title to the Elm Street and
Trumbull properties which consist of real estate.

trustees might reside here").  Thus, notwithstanding the

exceptional case where "personal jurisdiction over the trustee .

. . may give an in personam decree against him," <u>Beardsley v.

Hall</u>, 197 N.E. at 39; <u>see also</u> <u>Walton v. Harris</u>, 647 N.E.2d 65,

67 (Mass.App.Ct. 1995) ("[i]n order to exercise power over a

trust, a court must have jurisdiction over either the trustee or

the trust property"), the authority in <u>Hutchins</u> dictates caution

in exercising jurisdiction over the Sylvia Baghdady Residence

Trust even though this court has personal jurisdiction over

George Baghdady, one of the trustees.  This court therefore

doubts whether it has the power to compel the trustees to

effectuate a transfer of the Connecticut property held in trust

for estate purposes, i.e., in a will.[16]  Although plaintiff

proffers an argument regarding this court's jurisdiction over the

partnership (Docket Entry # 10, p. 6), plaintiff fails to proffer

any argument regarding this court's jurisdiction over the trust

defendants.  Plaintiff therefore fails in his burden to establish

jurisdiction over the Sylvia Baghdady Residence Trust.

What is even more evident is that this court lacks

jurisdiction over the George Baghdady Residence Trust.  George

Baghdady is not a trustee of this trust.  There is nothing in the

---

[16]  The complaint requests <u>inter</u> <u>alia</u> "that Defendant
execute the necessary paperwork to convey to Plaintiff a fifty
(50%) interest in the partnership and all partnership assets,
including the Elm Street Property . . . and the Trumbull
Property."  (Docket Entry # 1, ¶¶ 21(c), 25(c), 30(c) & 35(c)).

record to show that this court has in personam jurisdiction over
the trustees of the George Baghdady Residence Trust.  The res or
property lies in Connecticut.  There is also no evidence that the
administration of the trust was in Massachusetts as opposed to in
Connecticut.  Administration of garden center business in Sami
Baghdady's Massachusetts office does not warrant such an
inference given the uncontroverted evidence that the trust arose
under Connecticut law, the trustees are Connecticut residents,
the property itself lies in Connecticut and the settlor's intent
more than likely is to administer the trust in Connecticut.  See
generally Walton v. Harris, 647 N.E.2d at 67-68; Greenough v.
Osgood, 126 N.E. 461, 462 (Mass. 1920).  Thus, plaintiff fails in
his burden to show personal jurisdiction over the George Baghdady
Residence Trust.[17]

II.  VENUE

Defendants move for a transfer under 28 U.S.C. § 1404(a)
("section 1404(a)").  Neither party cites, refers to or argues
the applicability of the parallel venue statute of 28 U.S.C. §
1406(a) ("section 1406(a)").  The latter statute applies where

_____

[17]  In their moving papers, defendants ask this court to
dismiss the complaint or this action "in its entirety" or, if
not, then to transfer this action on the basis of improper venue.
Hence, this court does not read the filings as asking for the
dismissal *only* of the trust defendants.  Given the transfer of
the case to Connecticut, it nevertheless behooves plaintiff to
serve these defendants with process in the event he wishes to
continue to proceed against them.

venue is wrong in the chosen forum as distinguished from being proper but nonetheless inconvenient under section 1404(a). Albion v. YMCA Camp Letts, 171 F.3d 1, 2 n. 1 (1st Cir. 1999) (section 1404(a) "'presupposes that the action has been brought in a proper venue but authorizes its transfer to another district, also proper, but also more suited to the convenience of witnesses and the needs of justice'"); 17 Moore's Federal Practice, § 111.02[1] (2004).

Examining "the entire sequence of events underlying" the contract claim, Uffner v. La Reunion Francaise, S.A., 244 F.3d 38, 42 (1st Cir. 2001), venue arguably exists under 28 U.S.C. § 1391(a)(2) in Massachusetts inasmuch as the forum contacts include meetings in Massachusetts regarding the partnership business both as to its finances, tax filings, other administrative actions and, more importantly, its operations. The sequence of events underlying the misrepresentation claim likewise indicates that venue is proper in this district.[18]  The misrepresentations were made to plaintiff, located in Massachusetts, which is also where plaintiff experienced the loss.  Accordingly, this court turns to the statute defendants

---

[18]  In making this determination, this court accepts plaintiff's evidentiary proffers as true.  See generally M.K.C. Equipment Company v. M.A.I.L. Code, Inc., 843 F.Supp. 679, 681 (D.Kan. 1994) (noting that, "procedure to deciding a motion to dismiss for improper venue is generally the same as for deciding a motion to dismiss for lack of personal jurisdiction").

seek to employ for transferring this action to the Connecticut district court.

"The threshold question in a transfer motion is whether the action could have been brought in the district to which transfer is proposed." Arrow Electronics, Inc. v. Ducommun, Inc., 724 F.Supp. 264, 265 (S.D.N.Y. 1989). The issue, therefore, is "whether venue would be proper in the transferee court under 28 U.S.C. § 1391." Arrow Electronics, Inc. v. Ducommun, Inc., 724 F.Supp. at 266; accord Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (court must determine that the action "might have been brought" in the transferee district court). Without doubt, this action could have been brought in Connecticut where all defendants reside and where a substantial part of the events occurred. See 28 U.S.C. § 1391(a)(1) & (2).

A change of venue is governed by 28 U.S.C. § 1404(a) ("section 1404(a)") which provides, in pertinent part, that:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). Section 1404(a) codifies "the doctrine of forum non conveniens." Albion v. YMCA Camp Letts, 171 F.3d at 2.

"In addition to the convenience of parties and witnesses, the factors to be considered by the court include the availability of documents; the possibility of consolidation; and

the order in which the district court obtained jurisdiction."[19]
Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000).
Additional factors include the "'availability of compulsory
process for attendance of unwilling' witnesses." Veryfine
Products, Inc. v. Phlo Corporation, 124 F.Supp.2d 16, 24 (D.Mass.
2000) (noting that in context of deciding venue transfer under
section 1404(a) "[c]ourts essentially look to the forum non
conveniens factors" including "'availability of compulsory
process for attendance of unwilling' witnesses"); see also
Elbalah v. Republic Insurance Company, 879 F.Supp. 3, 5 (D.R.I.
1995) (citing "availability of compulsory process to compel
attendance of unwilling witnesses" as appropriate factor to
consider in deciding whether to transfer action to another
forum). Throughout, the burden of proof rests with defendants,
the parties seeking the transfer. Coady v. Ashcraft & Gerel, 223
F.3d at 11. Moreover, "there is a strong presumption in favor
of" the Massachusetts forum as the one chosen by plaintiff.
Coady v. Ashcraft & Gerel, 223 F.3d at 11.

Turning to the convenience of the parties and having
observed George Baghdady at the hearing, it is evident that this
factor weighs in defendants' favor. George Baghdady also avers

-----

[19]  The latter two factors do not apply inasmuch as there is
nothing in the record to suggest another ongoing suit involving
similar or identical issues. The suit involving the Zahleh
property proceeded to trial in Connecticut in February 2002.
(Docket Entry # 11, Ex. 2).

that it would be a significant hardship to litigate this matter in Massachusetts. See, e.g., Sigros v. Walt Disney World Co., 129 F.Supp.2d 56, 71 (D.Mass. 2001) (recognizing the burden imposed upon disabled plaintiff of traveling to and from a Florida forum). Although the geographic proximity of Connecticut to Massachusetts diminishes the hardship to George Baghdady, it is nonetheless present. The geographic proximity of Connecticut to Massachusetts makes Massachusetts only a slightly more convenient forum to plaintiff. The comparative financial cost of each forum to the parties appears neutral. See generally Sigros v. Walt Disney World Company, 129 F.Supp.2d at 71 (noting that, "the balance of convenience focuses on the comparative financial abilities of the parties and the cost of litigation should be borne by the party in the best position to absorb and spread it").

The convenience of the nonparty witnesses decidedly favors a Connecticut forum. With the exception of Cooper, the key players reside in Connecticut.[20] See Symbol Technologies, Inc. v. Quantum Associates, Inc., 2002 WL 225934 at * 2 (D.Mass. Jan. 30, 2002) (noting, in context of allowing motion to transfer case to California, that "several of the key players in this dispute live

---

[20] Weiner's residence is not contained in the record. He has provided advice and assistance to the Baghdady's for the past 31 years regarding the Elm Street and Trumbull properties in Connecticut.

and work in California").  These "key players" can likely testify
to the parties' relationship and the existence and scope of the
partnership agreement.  Cf. Symbol Technologies, Inc. v. Quantum
Associates, Inc., 2002 WL 225934 at * 2 (D.Mass. Jan. 30, 2002)
(discounting testimony of other witnesses who would "have little
to say about the central question of what the parties agreed to
under the 1999 Agreement"); see generally Foster-Miller, Inc. v.
Babcock & Wilcox Canada, 46 F.3d at 151 (noting that "judicial
second-guessing may be proper in deciding transfer-of-venue
motions").  These individuals include James Shevlin as well as
all of the trustees who would not be parties to this action if it
took place in this court and who more than likely reside, work or
regularly transact business in excess of 100 miles from the place
of trial.[21]  See Rule 45(c)(3)(A)(ii), Fed. R. Civ. P.  Weiner
and Attorney Ganim, also important participants, have principal
places of business in Connecticut and, although their residences
are unclear, a Connecticut forum is likely more convenient to
them than a Massachusetts forum.  Finally, plaintiff can more
than likely secure the appearance of Cooper, who has worked for
him for a number of years.  See Kleinerman v. Luxtron
Corporation, 107 F.Supp.2d 122, 125-126 (D.Mass. 2000).  In

---

[21]    Monroe, Connecticut, where Marshal D. Gibson resides, as
well as Stratford, Connecticut, where James Shevlin may work or
regularly transact business, are west of New Haven.  This court
takes judicial notice that New Haven is more than 100 miles from
Boston.

short, a Connecticut forum, where more key witnesses can testify live as opposed to by deposition, is more convenient to the great majority of the key witnesses.  See generally Sigros v. Walt Disney World Company, 129 F.Supp.2d at 71 ("[c]ourt must also consider the convenience of witnesses with a preference for live testimony over testimony by deposition").

Although deserving little weight, the location of documents, which can be transported, favors a Connecticut forum.  Applying Massachusetts choice of law rules, see Brown v. Hearst Corporation, 862 F.Supp. 622, 626 (D.Mass. 1994), Connecticut law applies to the breach of the partnership agreement, see, e.g., Brennan v. Carvel Corporation, 929 F.2d 801, 806 (1st Cir. 1991) (Massachusetts law governed deposit agreement entered into in Massachusetts that pertained to store located in Massachusetts), and is more familiar to a Connecticut trial judge.  See NPR, Inc. v. American International Insurance Co. of Puerto Rico, 242 F.Supp.2d 121, 125 (D.P.R. 2003) (trial judge's familiarity with local state law proper factor to consider in deciding section 1404(a) motion to transfer); see also Van Dusen v. Barrack, 376 U.S. at 645.[22]  On the other hand, in reaching this court's conclusion, this court assumes that Massachusetts law would apply

_____

[22]     In deciding whether to transfer an action, the Court in Van Dusen noted the "appropriateness" in diversity cases to have the trial "in a forum that is at home with the state law . . . rather than having" another court "untangle problems . . . in law foreign to itself."  Van Dusen v. Barrack, 376 U.S. at 645.

to the misrepresentation claim.  Massachusetts and Connecticut

have corresponding interests in protecting their citizens, <u>see

Kleinerman v. Luxtron Corporation</u>, 107 F.Supp.2d at 126 (noting

that "both California and Massachusetts have a similar and

corresponding interest in protecting their citizens from the

conduct which gives rise to this litigation"), although

Connecticut has a greater interest in the litigation by virtue of

the location of the property and the operation of the business in

its state.

Having given the matter careful and serious consideration,

the factors balance decisively in favor of a transfer to

Connecticut.  Thus, even after affording the strong presumption

to plaintiff's chosen forum of Massachusetts, a transfer to

Connecticut is warranted.

<u>CONCLUSION</u>

In accordance with the foregoing discussion, this court

**RECOMMENDS**[23] that the motion to dismiss or to transfer (Docket

Entry # 7) be denied to the extent of dismissing the action in

---

[23] Any objections to this Report and Recommendation must be
filed with the Clerk of Court within ten days of receipt of the
Report and Recommendation to which objection is made and the
basis for such objection.  Any party may respond to another
party's objections within ten days after service of the
objections.  Failure to file objections within the specified time
waives the right to appeal the order.  <u>United States v. Escoboza
Vega</u>, 678 F.2d 376, 378-379 (1st Cir. 1982); <u>United States v.
Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

its entirety for lack of in personam jurisdiction and **ALLOWED** to

the extent of transferring this action to the Connecticut

district court.


                         __/s/ Marianne B. Bowler____
                         **MARIANNE B. BOWLER**
                         United States Magistrate Judge